646 F.Supp. 769 (1986)
Charles W. MOEHLE, et al., Plaintiffs,
v.
NL INDUSTRIES, INC., et al., Defendants.
No. 85-554C(1).
United States District Court, E.D. Missouri, E.D.
Decided September 30, 1986.
Order and Memorandum October 1, 1986.
*770 Francis H. Kennedy, St. Louis, Mo., for plaintiffs.
Stuart M. Gerson, David H. Larry, Washington, D.C., Glenn L. Moller, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This matter is now before the Court on defendants' motion for summary judgment. Defendants base their motion on the undisputed historical facts and the allegedly unambiguous language of the 1976 Pension Plan and the Collective Bargaining Agreement. This Court finds that the 1976 Pension Plan and the Collective Bargaining Agreement are unambiguous and that there are no genuine issues of fact. Therefore, defendants' motion for summary judgment is granted on all of plaintiffs' claims.
This is an ERISA case involving the amount of pension benefits to which pension participants are entitled upon reaching age 60 when they were terminated with 30 or more years of service prior to age 60. Plaintiffs were members of Local No. 1744, Chemical Workers' Basic Union and were hourly employees of defendant NL Industries, Inc. NL Industries employed plaintiffs at its Titanium Pigment Plant in St. Louis, Missouri. Plaintiffs worked under a Collective Bargaining Agreement between NL Industries and plaintiffs' union, Local No. 1744. Plaintiffs were participants in *771 the Pension Plan at issue: "NL INDUSTRIES, INC. MODEL RETIREMENT PLAN for Salaried Employees Covered by a Collective Bargaining Agreement and Hourly Employees in the United States (Plan 2), Effective as Restated as of January 1, 1976." ("1976 Pension Plan"). On September 19, 1979, NL Industries closed its St. Louis Titanium Pigment Plant and terminated plaintiffs' employment.
When NL Industries closed its plant and terminated plaintiffs in 1979, plaintiffs were fully vested under the 1976 Pension Plan, had been employed for at least 30 years prior to termination, and, except for plaintiff Lamar Stewart, were under age 60. Prior to reaching age 60, plaintiffs filed Moehle v. NL Industries, Inc., No. 82-1780C(5) (E.D.Mo. Mar. 18, 1983) and Werner v. NL Industries, Inc., No. 80-897C(3) (E.D.Mo. Apr. 16, 1982), both of which were dismissed as untimely. When certain plaintiffs reached age 60, they applied to the NL Industries, Inc., Pension and Employee Benefits Committee ("PEBCO") for unreduced "60/30 Retirement" benefits. PEBCO administratively denied those claims. PEBCO determined that plaintiffs were entitled to a normal retirement benefit actuarially reduced to reflect retirement at age 60 rather than age 65, the normal retirement age. The unreduced "60/30 Retirement" benefit is greater than the actuarially reduced normal retirement benefit.
Thereafter, plaintiffs filed this suit against NL Industries, Inc., later joining as defendants the Pension Plan, PEBCO and seven PEBCO members. In their complaint, plaintiffs contend that (1) under the 1976 Pension Plan plaintiffs are entitled to unreduced "60/30 Retirement" benefits and that defendants interpreted the 1976 Pension Plan erroneously; (2) the 1976 Pension Plan, as interpreted by defendants, violates ERISA; (3) if the 1976 Pension Plan does not entitle plaintiffs to unreduced "60/30 Retirement" benefits, then defendants violated the Collective Bargaining Agreement between NL Industries and Local No. 1744 by not including such an entitlement provision in the 1976 Pension Plan; and (4) defendants breached their fiduciary duties to plaintiffs by terminating plaintiffs in 1979 rather than continuing them in employment status.

The 1968 Pension Plan
A Pension Plan covering employees at NL Industries' St. Louis Titanium Pigment Plant has existed in some form since the 1940's. The Pension Plan effective from January 1, 1968 until December 31, 1976 ("1968 Pension Plan"), provided both for normal retirement at age 65, [1968 Pension Plan § 4.1], and for early retirement at age 60 with either 30 years of service, [1968 Pension Plan § 4.2(a)(i)], or 20 years of service, [1968 Pension Plan § 4.2(a)(ii) ].
Under normal circumstances, an employee retiring at age 65 was entitled to benefits commencing at age 65. The retirement income would be the greater of benefits based on pension contributions and of a minimum benefit based upon years of participation in the Pension Plan. ("Normal Retirement Benefits"). [1968 Pension Plan § 5.1]. An employee retiring at age 60 with 30 years of service ("60/30 Retirement") was entitled to benefits based upon the period of plan participation up to age 60 with benefits commencing at age 60. [1968 Pension Plan § 5.2(a)]. An employee retiring at age 60 with 20 years of service ("60/20 Retirement") was entitled to elect either (1) benefits based upon the period of plan participation up to age 60, but commencing at age 65 [1968 Pension Plan § 5.2(b)], or (2) benefits based upon the period of plan participation up to age 60 commencing at age 60, but actuarially reduced to reflect commencement at age 60 rather than age 65. [1968 Pension Plan § 5.2(c)].
An employee participant whose employment was terminated after he had attained age 45 and had completed five years of participation could elect either to receive a cash refund of his contributions or to receive a retirement benefit commencing at age 65 based upon his period of plan participation up to the date of termination. [1968 Pension Plan § 6.1(b)].

*772 ERISA
In 1974, Congress enacted the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et. seq. Section 206(a) of ERISA, 29 U.S.C. § 1056(a), provides in pertinent part:
In the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.
Section 1056(a) requires those Pension Plans which provide an early retirement benefit to offer to those plan participants: (1) who have a nonforfeitable right to an accrued benefit and (2) who have completed the service requirements for early retirement, but (3) who separate from service prior to reaching the age for early retirement, the following benefit: the option to receive an actuarially reduced normal retirement benefit when the plan participant reaches early retirement age.
The House Conference Report described § 1056(a) as follows:
[I]f the plan permits an employee who has not separated from service to receive a subsidized early retirement benefit if he meets certain age and service requirements, the plan must also permit an employee who fulfills the service requirement, but separates from service before he meets the age requirement, to receive benefit payments, on an actuarially reduced basis, when the separated employee meets the age requirement.
House Conf.Report No. 93-1280, 93d Cong., 2d Sess. reprinted in [1974] U.S. Code Cong. & Ad.News 4639, 5038, 5062.
The purpose of § 1056(a) is to ensure that if a plan promises the right to receive accrued benefits at an early retirement age upon meeting the service requirement, then all participants, including terminated employees, who meet the service requirement are entitled to receive benefits at the early retirement age. However, these terminated employee participants are not entitled to unreduced early retirement benefits. Rather, § 1056(a) guarantees these terminated employee participants actuarially reduced normal retirement benefits. Under § 1056(a) terminated employee participants do not stand on equal footing with employee participants who retire from employment at the early retirement date. See Phillips v. Amoco Oil Co., 614 F.Supp. 694, 716 (N.D.Ala.1985); Petrella v. NL Industries, Inc., 529 F.Supp. 1357, 1369 (D.N.J.1982).
The 1968 NL Industries Pension Plan did provide for early retirement benefits ("60/30 Retirement" and "60/20 Retirement"). The plan provided for benefits commencing at age 65 for terminated employee participants based upon the length of their employment participation. [1968 Pension Plan § 6.1(b) ]. However, the plan did not provide for the benefit commencing at age 60 for terminated employee participants required by the 1974 enactment of § 206(a) of ERISA, 29 U.S.C. § 1056(a).
Thus, NL Industries needed to alter its Pension Plan in order to comply with ERISA.

The Collective Bargaining Agreement
On September 23, 1976, NL Industries, Inc. and Chemical Workers' Basic Union Local No. 1744 of St. Louis, Missouri, entered into a Collective Bargaining Agreement. The Agreement Article XVIII, RETIREMENT ANNUITY AND LIFE INSURANCE PLAN, provided for the following relevant changes to be made to the Pension Plan:
1. VESTING  As outlined in the Memorandum in compliance with the Employee Retirement Income Security *773 Act of 1974 as shown at the end of this section.
and
3. ALTERNATE MINIMUM PENSION FORMULA  [Increase in the alternate minimum pension formula to $10.00 per month per year of continuous plan participation effective October 1, 1976.] [Employees retiring under normal, "60/30", or "60/20" plans] shall be entitled to receive a retirement annuity in the full amount accumulated under the plan to date of retirement or on application of the alternate minimum of $10.00 per month per year of continuous participation whichever yields the greater amount. Retirements under the 60/20 provision will be actuarially discounted under both formulas. [Increase in the minimum to $10.50 per month per year on October 1, 1977, and increase to $11.00 per month per year on October 1, 1978.]
The ERISA Compliance Memorandum stated in pertinent part:
MEMORANDUM
In order to bring the Company's Retirement Plan into compliance with the Employee Retirement Income Security Act of 1974, said Retirement Plan shall be modified as follows:
....
Vesting
A participant who, after he has become vested, terminates or withdraws from the Plan shall cease to remain a Participant and
a) in the event he withdraws his contributions he shall have a cash refund in an amount equal to his Pension Plan contributions credited with interest, and will receive at Normal Retirement Date of age 65 a retirement income based upon Company contributions to the Plan (or an actuarially reduced pension after age 60, provided he has achieved 20 years or more of participation prior to termination), or
b) if he does not withdraw his contributions he shall receive at Normal Retirement Date of age 65, a retirement income based upon pension accruals for his years of Participation to the date of termination or withdrawal. (or an actuarially reduced pension after age 60, provided he has achieved 20 years or more of participation prior to termination.)
An eligible employee becomes vested when:
a) he has attained age 40 and completed 5 years of Pension Plan Participation, or
b) he has completed ten (10) years of Continuous Service after attaining age 22 and one (1) year Continuous Service if he elects to join and maintain Participation in the Pension Plan when first eligible, or
c) he has completed ten (10) years of continuous participation after joining the Pension Plan.

The 1976 Pension Plan
In order to come into ERISA compliance and in order to effectuate the Collective Bargaining Agreement ERISA Compliance Memorandum, NL Industries revised the Pension Plan. NL Industries adopted "NL INDUSTRIES, INC. MODEL RETIREMENT PLAN for Salaried Employees Covered by a Collective Bargaining Agreement and Hourly Employees in the United States (Plan 2), Effective as Restated as of January 1, 1976."
The revised plan continued normal retirement at age 65. "A participant's right to his normal retirement benefit [became] fully vested on the attainment of" age 65. [1976 Pension Plan § 5.1]. The revised plan continued "60/30 Retirement", retirement eligibility at age 60 after completion of at least 30 years of retirement eligibility service. [1976 Pension Plan § 5.2]. The revised plan continued "60/20 Retirement", retirement at age 60 after completion of at least 20, but less than 30 years, of retirement eligibility service. [1976 Pension Plan § 5.3].
*774 Retirement income under both normal retirement commencing at age 65 and "60/30 Retirement" commencing at age 60 would be the greater of income based on "the career accrual benefit" and "the alternate minimum benefit" formula. [1976 Pension Plan § 6.1]. Retirement income under "60/20 Retirement" ("Retirement Income at Early Retirement Date") would be based upon the participant's accrued benefit. The "60/20" participant could elect to have the full benefit commence at age 65 or to have an actuarially reduced benefit commence at age 60. [1976 Pension Plan § 6.2].
To effectuate § 1056(a) and the ERISA Compliance Memorandum, the revised plan added § 6.4 and § 8.2. The 1976 Pension Plan provides:
Article VIII
Change in Employee's Status
8.2 Entitlement to Benefits on Termination of Employment Without Reemployment. Subject to the provisions of Section 8.3(a):
(a) [A participant who is terminated and who is not fully vested can elect to receive a refund of his pension contributions or a retirement benefit commencing at age 65 based upon his contributions to the plan. Full vesting occurs when a participant completes 10 years of service or attains age 40 with 5 years of service. 1976 Pension Plan § 4.2.]
(b) A Participant whose employment is terminated, without resuming employment, after becoming fully vested pursuant to Section 4.2(a), shall receive a single sum distribution of any contributions made to the Plan, with Interest, unless he elects to defer distribution of such contributions until Normal Retirement Date. Any such election must be made not later than one year from the date his employment is terminated. Such Participant shall be entitled to receive adeferred vested retirement benefit, determined in accordance with Section 6.4, based upon his Accrued Benefit as of his termination of employment; provided, however, that if the Participant did not make a timely election to defer distribution of his contributions, his deferred vested benefit shall be based solely upon his Accrued Benefit derived from Company contributions.
(c) [Repayment of contributions upon reemployment.]
Section 8.3(a) determines the effect of intra-company transfers.
The 1976 Pension Plan Article VI provides for computation of benefits:
6.4 Retirement Income of Participant Entitled to Deferred Vested Retirement Benefit. The retirement income benefit of a Participant who is entitled to receive a deferred vested retirement benefit pursuant to Section 8.2(b) shall be equal to either:
(a) A monthly benefit commencing at his Normal Retirement Date calculated in accordance with Section 6.1 based upon his Accrued Benefit on his date of termination of employment with the Division; or
(b) Provided he shall have completed at least 20 years of Retirement Eligibility Service on the date his employment terminates, a monthly benefit commencing on the first day of any month coincident with or following his attainment of age 60, determined in accordance with Subsection (a) above, but reduced by one-half percent (½%) for each month by which the Participant's commencement of benefits precedes his Normal Retirement Date.
Section 8.2(b) provides that if a participant is terminated after becoming fully vested (10 years of service or 40 years of age with five years of service, 1976 Pension Plan § 4.2), then the participant can elect to receive either (1) an immediate lump sum distribution of all plan contributions, or (2) a deferred vested retirement benefit based upon his accrued benefits commencing at the normal retirement age (65). Section 6.4 provides the method for *775 calculating the amount of the § 8.2(b) deferred vested retirement benefit. Section 6.4 provides that if a participant is entitled to and elects a § 8.2(b) deferred vested retirement benefit, then the benefit will commence (1) at age 65, the normal retirement date, [1976 Pension Plan § 6.4(a)], or (2) at age 60, if the participant further elects and if the participant has completed at least 20 years of service. [1976 Pension Plan § 6.4(b)]. The amount of the benefit received at age 65 under § 6.4(a) is based on the participant's accrued benefit. The amount of the benefit received at age 60 under a § 6.4(b) election is also based on his accrued benefit, but is actuarially reduced to reflect benefits commencing at age 60 rather than age 65.

The Historical Facts
The historical facts in this case are not in dispute. In 1979, NL Industries terminated plaintiffs' employment. At that time plaintiffs all had over 30 years of service with NL Industries. All plaintiffs were fully vested under the Pension Plan. All plaintiffs, except Lamar Stewart, were under 60 years of age. When plaintiffs turned age 60, they sought unreduced "60/30 Retirement" benefits under 1976 Pension Plan § 5.2 and § 6.1. Defendants determined that plaintiffs were entitled to the deferred vested retirement benefit under 1976 Pension Plan § 8.2(b) and § 6.4(b). This benefit is an actuarially reduced normal retirement benefit.

Summary Judgment
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty and Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Buller, 706 F.2d at 846. However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller and Kane, Federal Practice and Procedure, § 2739 (1983).
Disputes involving the interpretation of unambiguous contracts and undisputed historical facts are appropriate cases for summary judgment. If a contract is unambiguous, then its meaning is a matter of law and no genuine issues of material fact exist. Only if a contract is ambiguous is the meaning of the contract a question of fact precluding summary judgment. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 624 (8th Cir.1981); Champale, Inc. v. Joseph S. Pickett & Sons, Inc., 599 F.2d 857, 859 (8th Cir.1979); Parish v. Howard, 459 F.2d 616, 618 (8th Cir.1972). The 1976 Pension Plan and the Collective Bargaining Agreement are contracts. The historical facts in this case are not in dispute. Thus, the Court must determine if the two contracts are ambiguous so as to create a question of fact precluding summary judgment.
Clear and unambiguous language in a contract should be given its plain meaning. The terms and provisions of a contract should be read in the context of the whole contract to determine if there is an ambiguity. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 624 (8th Cir. 1981); Champale, Inc. v. Joseph S. Pickett & Sons, Inc., 599 F.2d 857, 859 (8th Cir. 1979). A contract should be interpreted to give effect to all terms. To determine if a contract is ambiguous, the Court should consider the whole contract, which includes the surrounding circumstances, the subject matter of the contract, the facts and circumstances of execution, and the purposes *776 of the contract. Press Machinery Corp. v. Smith R.P.M.Corp., 727 F.2d 781, 784 (8th Cir.1984); Wilshire Construction Co. v. Union Electric Co., 463 S.W.2d 903, 906 (Mo.1971); Beck v. Hoel-Steffen Construction Co., 605 S.W.2d 810 (Mo.App.1880).
A contract is ambiguous under Missouri law only if it is susceptible to more than one construction, giving the words to the contract their plain and ordinary meaning as understood by reasonable, average persons. Property Tax Research Co. v. Falstaff Brewing Co., 708 F.2d 1333, 1337 (8th Cir.1983); Champale, Inc. v. Joseph S. Pickett & Sons, Inc., 599 F.2d 857, 859 (8th Cir.1979). The mere fact that the parties disagree as to the meaning of a contract does not mean that there is an ambiguity. Merz v. First National Bank of Franklin County, 682 S.W.2d 500, 502 (Mo.App. 1984).
With these principles in mind, the Court finds the 1976 Pension Plan to be an unambiguous contract susceptible to only one reasonable interpretation. Sections 8.2 and 6.4 apply to plaintiffs. Plaintiffs are entitled to actuarially reduced normal retirement benefits. Plaintiffs are not entitled to unreduced "60/30 Retirement" benefits because they were not employees when they reached age 60 and thus could not "retire".
Plaintiffs contend that § 8.2 and § 6.4 do not apply. They contend that all plan "participants" were entitled to "retire" upon reaching age 60, whether or not the participant was still employed by defendant at that time. Plaintiffs contend that the eligibility for "60/30 Retirement" and "60/20 Retirement" is dependent only upon age and years of service, and is not dependent upon employment status.
Plaintiffs' argument that all plan "participants" were entitled to "retire" upon reaching age 60 is unsound. It ignores the plain meaning of the words "may retire" in § 5.2 ("60/30 Retirement") and § 5.3 ("60/20 Retirement"). It reads § 8.2 and § 6.4 out of the Pension Plan. It ignores the surrounding circumstances of the 1976 Pension Plan: the 1974 ERISA 29 U.S.C. § 1056(a) enactment and the subsequent changes to the 1968 Pension Plan pursuant to the Collective Bargaining Agreement ERISA Compliance Memorandum.
The 1976 Pension Plan § 5.2 provides:

60/30 Retirement Date. Upon advance written notice filed with the Plan administrator, a Participant may retire on the first day of the month coincident with or next following the date he attains age sixty and completes at least thirty years of Retirement Eligibility Service, or on the first day of any month subsequent thereto but prior to his Normal Retirement Date.
1976 Pension Plan § 5.3 provides:
Early Retirement Date.
(a) Upon advance written notice filed with the Plan administrator, a Participant may retire prior to his Normal Retirement Date on the first day of any month coincident with or next following the date he attains age 60 and completes at least 20 years, but less than 30 years of Retirement Eligibility Service.
ERISA, 29 U.S.C. § 1002(7), defines participant to mean any employee or former employee who is or may become eligible to receive a pension benefit. Plaintiffs contend that, because § 5.2 and § 5.3 both state that "a participant may retire," former employee participants can retire.[1] ERISA does not define "retire." The dictionary definition of "retire" in the employment context is "to withdraw from office, business, or active life." The American College Dictionary 1036 (1970). The plain *777 and ordinary meaning of "retire" is the cessation of employment at an advanced age. There is nothing in the 1976 or 1968 Pension Plans to indicate any contrary meaning for "retire" in § 5.2 and § 5.3, or their predecessor sections in the 1968 Plan. Reasonable persons understand that only employees can retire.
Plaintiffs contend that the phrase "a participant may retire" in § 5.2 and § 5.3 creates an ambiguity in the 1976 Pension Plan. However, § 8.2 and § 6.4 are provisions directly controlling the entitlement, commencement, and quantity of benefits for participants whose employment is terminated prior to retirement age. Thus, when § 5.2 and § 5.3 are read in the context of the whole contract and read in conjunction with § 8.4 and § 6.4, there is no ambiguity. The participants referred to in § 5.2 and § 5.3 are those participants who are employees.[2] Only employee participants can retire and obtain retirement benefits under § 5.2 or § 5.3. Section 8.2 is captioned "Entitlement to Benefits on Termination of Employment Without Reemployment." Former employee participants can elect and obtain a deferred vested retirement benefit under § 8.2 and § 6.4.
The Pension Plan when read as a whole is unambiguous. Plaintiffs as fully vested employees terminated prior to age 60 were entitled under § 8.2(b) to elect a deferred vested retirement benefit to be determined in accordance with § 6.4. Plaintiffs having completed over 20 years of service were entitled under § 6.4(b) to elect to have their benefits start at age 60. Under § 6.4(b), these benefits are actuarially reduced normal retirement benefits. Plaintiffs are not entitled to unreduced "60/30 Retirement" benefits under § 5.2, because they were not employees when they reached age 60 and thus could not retire. As a matter of law, plaintiffs are not entitled to the unreduced benefits under the pension plan and the decision to deny plaintiffs unreduced benefits was not arbitrary, capricious, or an abuse of discretion. Lawrence v. Westerhaus, 780 F.2d 1321 (8th Cir.1985). Therefore, defendants' motion for summary judgment on plaintiffs' claim under the pension plan is granted.
Section 8.2 and § 6.4 were added to the pension plan to effect compliance with ERISA 29 U.S.C. § 1056(a). Defendants' Pension Plan provides for two forms of early retirement: "60/30 Retirement" and "60/20 Retirement."[3] Thus, § 1056(a) requires *778 the Pension Plan to offer fully vested terminated employees with 20 or more years of service an actuarially reduced normal retirement benefit commencing at age 60. Section 8.2 and § 6.4 offer fully vested terminated employees with 20 or more years of service an actuarially reduced normal retirement benefit commencing at age 60. Section 8.2 and § 6.4 provide exactly what ERISA 29 U.S.C. § 1056(a) requires. Defendants' Pension Plan complies with ERISA 29 U.S.C. § 1056(a). Therefore, defendants' motion for summary judgment on plaintiffs' ERISA claim is granted.
Plaintiffs also contend that defendant breached the Collective Bargaining Agreement by not including a provision which would provide for unreduced "60/30 Retirement" benefits for employees with 30 years of service who are terminated prior to age 60. Plaintiffs point to the Collective Bargaining Agreement Article XVIII and the ERISA Compliance Memorandum quoted above. The Court finds no language in either Article XVIII or the Compliance Memorandum which would even arguably support the entitlement to the benefit provision sought by plaintiffs. On the contrary, the Compliance Memorandum, Vesting, provides: "A participant who, after he has become vested, terminates or withdraws from the plan shall cease to remain a participant and (a) [he may withdraw his contributions and receive (1) normal retirement at age 65 based on company contributions or (2) an actuarially reduced pension at age 60 based on company contributions if he has achieved 20 or more years of participation prior to termination,] or (b) if he does not withdraw his contributions he shall receive [1] at Normal Retirement Date of age 65, a retirement income based upon pension accruals for his years of participation to the date of termination or withdrawal. (or [2] an actuarially reduced pension after age 60, provided he has achieved 20 years or more of participation prior to termination.)" (emphasis added).
The Compliance Memorandum is unambiguous. Section 8.2 and § 6.4 provide precisely what the Compliance Memorandum requires. Section 8.2, § 6.4, and the Compliance Memorandum provide precisely what ERISA 29 U.S.C. § 1056(a) requires. There has been no breach of the Collective Bargaining Agreement and no violation of ERISA § 1056(a).[4] Therefore, defendants' motion for summary judgment on plaintiffs' breach of Collective Bargaining Agreement claim is granted.
Plaintiffs further contend that defendants have breached their fiduciary duties as the administrators of the Pension Plan. NL Industries appoints and removes PEBCO members. PEBCO administers the pension plan. Thus, NL Industries is a fiduciary within the meaning of ERISA and thus subject to the high fiduciary standard set forth in Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 105 S.Ct. 2833, 2840-41, 86 L.Ed.2d 447 (1985).
NL Industries as employer closed its St. Louis plant. If NL Industries as employer had kept plaintiffs on layoff status for several years (from 1979 to 1984), rather than terminating their employment, then plaintiffs would have received unreduced "60/30 Retirement" benefits upon reaching age 60, rather than actuarially reduced normal retirement benefits. Unreduced "60/30 Retirement" benefits are greater than actuarially reduced normal retirement *779 benefits. NL Industries as plan fiduciary had a fiduciary duty to maximize plaintiffs' pension benefits. Plaintiffs contend that, because NL Industries was both employer and pension plan fiduciary, NL Industries acting as an employer had a fiduciary duty to maximize plaintiffs' pension benefits and to keep plaintiffs on layoff status, rather than terminating them.
This Court finds no merit in plaintiffs' contention. NL Industries as employer made a business decision to close its St. Louis plant. The closing of the plant does not implicate NL Industries' fiduciary duties as plan fiduciary. "The mere fact that a company has named itself as pension plan administrator, fiduciary, or trustee does not restrict it from pursuing reasonable business behavior...." Dhayer v. Weirton Steel Division of National Steel Corporation, 571 F.Supp. 316, 328-329 (N.D.W.Va.1983). See Sutton v. Weirton Steel Division of National Steel Corporation, 724 F.2d 406, 411 (4th Cir.1983), cert. denied, 467 U.S. 1025, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).
The ERISA fiduciary duties are derived from the common law of trusts and are imposed upon NL Industries in its actions as a plan fiduciary with respect to the pension fund. Central States v. Central Transport, Inc., 105 S.Ct. at 2841; ERISA, 29 U.S.C. §§ 1101-1114. NL Industries did not have fiduciary duties when it was acting in its capacity as employer making employment decisions.[5] The fiduciary duties apply only to activities, decisions, and transactions directly affecting or dealing with the pension plan. NLRB v. AMAX Coal Co., 453 U.S. 322, 333-334, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (1981). ERISA permits the employer to serve as a plan fiduciary. However, the employer "assume[s] fiduciary duties only when and to the extent that [it] functions in [its] capacity as a plan [fiduciary], not when [it] conducts business that is not regulated by ERISA." Amato v. Western Union International, Inc., 773 F.2d 1402 (2nd Cir. 1985), cert. dismissed, ___ U.S. ___, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). Plaintiffs have not contested any actions of NL Industries acting in its capacity as plan fiduciary. Thus, fiduciary duties are not implicated by the complaint. Therefore, defendants' motion for summary judgment on plaintiffs' breach of fiduciary duties claim is granted.[6]
The historical facts in this case are not in dispute. The Pension Plan is unambiguous. Defendants properly interpreted and applied the Pension Plan to provide plaintiffs with an actuarially reduced normal retirement benefit. The Pension Plan complies *780 with ERISA requirements. The Pension Plan complies with the Collective Bargaining Agreement. Defendants' activities as employer in closing its St. Louis plant and terminating plaintiffs from employment do not implicate defendants' fiduciary duties as plan fiduciary. This case is appropriate for summary judgment. There are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Therefore, this Court grants defendants' motion for summary judgment as to plaintiffs' complaint.

ORDER AND MEMORANDUM
IT IS HEREBY ORDERED that the motion to intervene filed in this action be and is denied.
On February 14, 1986, Frank Calvert, C.P. Melker, Aaron Montgomery, Kenneth J. Nicholas, and John Trenholm ("Intervenors") filed a motion to intervene in the Moehle v. NL Industries, Inc., No. 85-554C(1), action.
On September 30, 1986, the Court granted defendants' motion for summary judgment as to plaintiffs' complaint in the Moehle v. NL Industries action. Therefore, Intervenors' motion to intervene is denied as moot.
NOTES
[1] Section 5.1 provides the normal retirement date, age 65, for participants. There is no active language in § 5.1, such as "a participant may retire." This omission does not support plaintiffs' contention that participants can "retire" and obtain benefits under § 5.2 and § 5.3 without being employees. Section 5.1 normal retirement date is an automatic retirement. Under § 5.5(a) normal retirement benefits automatically commence within 60 days after the close of the year in which the participant reaches age 65. Further, § 6.5 provides for the contingency where a participant does not cease work at age 65.
[2] It is the pension plan drafter's use of the phrase "a participant," without specifying which participant, that created plaintiffs' belief that terminated employee participants could retire under § 5.2 and § 5.3. A better drafted pension plan would have stated "an employee participant may retire." Perhaps the roots of the drafting problem are (1) the 1968 Pension Plan § 1.9 definition of participant to be an employee who has not been terminated; (2) the carryover of the phrase "a participant may retire" from 1968 Pension Plan § 4.2(a) to 1976 Pension Plan § 5.2 and § 5.3; and (3) the statement, contrary to ERISA 29 U.S.C. § 1002(7), in the ERISA Compliance Memorandum that: "A participant who, after he has become vested, terminates or withdraws from the Plan shall cease to remain a Participant...." Under ERISA 29 U.S.C. § 1002(7) both employees and former employees may be participants. The 1976 Pension Plan does not incorporate the definitional misstatement contained in the Compliance Memorandum. However, this misstatement plus the carryover of terminology from the 1968 Pension Plan may have caused the drafter of § 5.2 and § 5.3 to use the phrase "a participant" with the belief that only employees could be participants and without recognizing that terminated employees could be participants.
[3] Under the 1968 plan, both "60/30 Retirement" and "60/20 Retirement" were captioned "Early Retirement Date" [1968 Pension Plan § 4.2]. Under the 1976 plan, "60/20 Retirement" is captioned "Early Retirement Date," [1976 Pension Plan § 5.3], but "60/30 Retirement" is captioned "60/30 Retirement." [1976 Pension Plan § 5.2]. Under both the 1968 and the 1976 Pension Plans, retirement at age is 65 is captioned "Normal Retirement Date". [1968 Pension Plan § 4 & 1976 Pension Plan § 5.1]. Under 29 U.S.C. § 1002(24), 29 U.S.C. § 1056(a), and § 5.1 of the 1976 plan, the normal retirement benefit commences at age 65, the normal retirement age. Both "60/20 Retirement" and "60/30 Retirement" provide benefits at age 60 rather than age 65. Even though only "60/20 Retirement" is captioned "Early Retirement Date," [1976 Pension Plan § 5.2 & § 5.3], both "60/20" and "60/30" retirement benefits are provisions of the Pension Plan for the payment of an "early retirement benefit" as that phrase is used in 29 U.S.C. § 1056(a).
[4] Plaintiffs have attached a copy of a 1967 pamphlet describing the Pension Plan as it existed at that date. That pamphlet clearly states that prior to ERISA terminated employees could receive a retirement benefit at normal retirement age, but that there was no "option for earlier commencement." (P. 18, ¶ 10). Plaintiffs have also attached a 1976 pamphlet explaining changes to the Pension Plan made to comply with ERISA. In that pamphlet there was no discussion of benefit entitlement for terminated employees. Rather, that document refers readers to their "labor Contract Agreement booklet." (P. 4, Vesting). The failure of defendants to explain the ERISA required changes for terminated employees in this pamphlet is not a breach of the 1976 Collective Bargaining Agreement.
[5] Further, the 1976 Pension Plan, § 14.1, states:

Employment Relationships. Nothing contained herein shall be deemed to give any Employee the right to be retained in the service of a Designated Unit or to modify or affect the terms of employment of any Employee or to interfere with the rights of a Designated Unit to discharge any Employee at any time.
[6] Plaintiffs' breach of fiduciary duties claim appears to be an attempt to contort an ERISA § 510, 29 U.S.C. § 1140, claim. Essentially, plaintiffs contend that, by closing the plant and terminating plaintiffs, NL Industries prevented plaintiffs from obtaining unreduced "60/30 Retirement" benefits. Section 1140 provides in pertinent part: "Interference with protected rights. It shall be unlawful for any person to discharge ... a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or ERISA]...." Plaintiffs have not cited § 1140 in any of their papers and they have not alleged facts which would state a claim for relief under § 1140. Firstly, plaintiffs were vested and § 1140 is designed to prevent employers from discharging employees in order to prevent vesting. West v. Butler, 621 F.2d 240, 245 (6th Cir.1980). Secondly, plaintiffs cannot make a good faith allegation that the closure of the St. Louis plant and the termination of plaintiffs were done "for the purpose of interfering with [plaintiffs'] attainment of" benefits. The closure and termination had readily apparent business justifications. Aronson v. Servus Rubber Division of Chromalloy, 730 F.2d 12, 16 (1st Cir.), cert. denied, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 35 (1984). Thirdly, § 1140 only prohibits action aimed at individuals. The decision to close a plant is not a § 1140 violation, even though it necessarily interferes with the terminated employees' attainment of benefits, so long as the plant closure had business justification. Aronson v. Servus Rubber Division of Chromalloy, 730 F.2d 12, 16 (1st Cir.1984). See Utz & Martucci, Unlawful Interference With Protected Rights Under ERISA, 42 J.Mo.B. 177, 182 (1986).