Andrew P. DZINGLSKI,
Plaintiff–Appellant,

v.

WEIRTON STEEL CORPORATION; Retirement Committee of Weirton Steel Corporation Retirement Plan, Defendants–Appellees.

No. 88–3877.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1989.

Decided May 19, 1989.

Christopher Lepore (Cooper & Lepore, Pittsburgh, Pa., Daniel Dickinson, Robinson & Dickinson, Wheeling, W.Va., on brief), for plaintiff-appellant.

Peter R. Rich (Carl N. Frankovitch, John A. McCreary, Jr., Volk, Frankovitch, Anetakis, Recht, Robertson & Hellerstedt, Wheeling, W.Va., on brief), for defendants-appellees.

Before CHAPMAN and WILKINSON, Circuit Judges, and DOUMAR, District Judge for the Eastern District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

ERISA, 29 U.S.C. §§ 1001 *et seq.*, requires a plan fiduciary to disclose to a plan participant the specific reasons for a denial of benefits. The question here is whether that obligation requires a fiduciary to disclose to a discharged employee, who applies for early retirement benefits, the reasons for his discharge if the denial of benefits is otherwise in accordance with the plan. The district court held that ERISA created no such obligation here. We affirm.

## I.

Plaintiff Andrew P. Dzinglski worked for defendant Weirton Steel Corporation from May 12, 1959 until his termination for cause on October 31, 1984. At the time of his discharge he was 46 years old. Weirton maintains a pension plan in which plaintiff was a participant. The plan is administered by the Retirement Committee of the Weirton Steel Corporation Retirement Plan.

The Weirton plan provides an early retirement "Rule-of-65" pension. The Rule-of-65 pension provides eligible employees with an actuarially unreduced early retirement benefit in addition to a $400 monthly supplement, paid until normal retirement age. Eligibility for the Rule-of-65 pension is conditioned upon the attainment of minimum age and years of service and the occurrence of one of several contingencies. For hourly employees, for example, the contingencies include: service broken by reason of a layoff or disability; absence from work by reason of layoff resulting from an election to be placed on layoff status pursuant to the agreement applicable in the event of a permanent shutdown; absence from work by reason of a physical disability or layoff where return to active employment is declared unlikely by Weirton; or retirement that Weirton and the employee consider to be in their respective interests.[1] The relevant contingency here

---

1. The relevant plan provision provides:

Any Participant (i) who shall have had at least 20 years of Service as of his last day worked, (ii) who has not attained the age of 55 years, and (iii) whose combined age and years of Service shall equal 65 or more but less than 80, and

(a) in the case of a Participant who is an Hourly Employee or a Salaried Employee—whose Service is broken by reason of a layoff or disability, or

(b) in the case of a Participant who is a Salaried Employee—whose Service is not broken and who is absent from work by reason of a physical disability or a layoff and whose return to active employment is declared unlikely by Weirton, or

(c) in the case of a Participant who is an Hourly Employee—whose Service is not broken and who is absent from work by reason of layoff resulting from his election to be placed on layoff status pursuant to the provisions of the Basic Agreement applicable in the event of a permanent shutdown, or

(d) in the case of a Participant who is an Hourly Employee—whose Service is not broken and who is absent from work by reason of a physical disability or a layoff other than a layoff resulting from an election referred to in subparagraph (c) above and whose return to active employment is declared unlikely by Weirton, or

(e) in the case of a Participant who is an Hourly Employee or a Salaried Employee—who considers that it would be in his interest to retire, and Weirton considers that such retirement would likewise be in its interest and it approves an application for retirement under mutually satisfactory conditions, and who has not been offered suitable long-term employment (hereinafter "SLTE") by Weirton shall be eligible to retire and shall upon his retirement on or after the Effective Date (hereinafter "rule-of-65 retirement") be eligible for a pension....

is the mutual stipulation of both the employee and Weirton that the employee's retirement is in their respective interests.

Plaintiff applied for a Rule–of–65 pension the day he was terminated. He met the *age and service criteria but Weirton did* not consider his retirement to be in its interest. Accordingly, by letter dated November 5, 1984, the Retirement Committee denied plaintiff's application, informing him that Rule–of–65 benefits are not available where "service has been broken for reasons other than layoff or disability, and Company approval for such benefits has not been granted." Plaintiff appealed this denial and a hearing was held before the Retirement Committee on March 18, 1985. On April 12, 1985, the Committee affirmed its denial of plaintiff's application for the reasons set forth in its November 5, 1984 letter.

Plaintiff filed suit in the Northern District of West Virginia on October 22, 1985, alleging that defendants' denial of pension benefits violated ERISA's internal review and notice provisions. The district court determined that plaintiff failed to state a claim upon which relief could be granted. Specifically, the court found that 1) Rule–of–65 retirement, "conditioned upon Weirton's consent, does not violate ERISA;" 2) Rule–of–65 retirement does not violate ERISA's reporting and disclosure requirements; 3) Weirton's determination that plaintiff's early retirement was not in its interest was not undertaken in a fiduciary capacity; and 4) "plaintiff was not deprived of a full and fair review of his retirement application by the Retirement Committee by reason of the alleged nondisclosure of Weirton's reason for not finding Plaintiff's retirement to be in its interest[ ]."

Plaintiff appeals.

## II.

The Weirton plan provides in relevant part that:

(b) The Retirement Committee shall have all powers and duties necessary or appropriate to operate and administer the Plan, including, but not limited to, the following specific functions:

(1) To act on applications for benefits.

(2) To determine eligibility, service, earnings, and other questions.

The Retirement Committee ascertains eligibility by determining whether an applicant meets Rule–of–65 criteria: whether the applicant meets minimum age and years of service requirements and, in this case, whether there exists the mutual assent of both the employee and Weirton that the employee's retirement is in their respective interests.

■ ERISA requires that every employee benefit plan provide written notice to any participant of the reasons an application for benefits is denied and a reasonable opportunity for a full and fair review of the denial by an appropriate fiduciary. 29 U.S. C. § 1133. Dzinglski argues that he did not receive a fair hearing under 29 U.S.C. § 1133 because the Retirement Committee did not disclose to him the precise reasons that Weirton did not determine his retirement to be "in its interest," thus preventing him from contesting the reasons for Weirton's refusal of his claim for benefits. He claims it is not sufficient for a fiduciary to inform a participant that the employer does not agree that retirement is in its interest. The fiduciary must further advise the participant why the employer refuses to agree.

■ We disagree. ERISA's obligation to notify a participant of the reasons for the denial of benefits does not require a plan fiduciary to disclose an employer's specific reasons for determining that an employee's application for early retirement is not in its interest. The plan does not permit the Retirement Committee to examine Weirton's decision in that regard. It does not authorize the Retirement Committee to determine Weirton's interest, only to ascertain Weirton's assent. A trustee

This is one of many provisions for early retirement in the Weirton Plan, including: "62/15 Retirement," "30 Year Retirement," "60/15 Retirement," "Permanent Incapacity Retirement," and "70/80 Retirement."

must strictly adhere to the terms of the plan and inform a participant of the reasons for the denial of his benefits according to the plan, not advance an employer's separate determination of its own interests. *Hlinka v. Bethlehem Steel Corporation*, 863 F.2d 279, 286 (3d Cir.1988); *Hickman v. Tosco Corporation*, 840 F.2d 564, 566 (8th Cir.1988); *Moehle v. NL Industries, Inc.*, 646 F.Supp. 769, 777 (E.D.Mo.1986), *aff'd*, 845 F.2d 1027 (8th Cir.1988); *Foltz v. U.S. News & World Report, Inc.*, 613 F.Supp. 634, 639 (D.D.C.1985).

The Retirement Committee did, of course, hold a hearing and inform Dzinglski why his benefits were denied. By letter dated November 5, 1984, the Committee notified appellant that his application was denied because "Rule-of-65 retirement benefits are not available where, as in your case, service has been broken for reasons other than layoff or disability, and Company approval for such benefits has not been granted." Following a hearing, requested by appellant, the Committee reaffirmed its denial of appellant's application for the reasons set forth in the letter of November 5.

While Dzinglski claims the Committee's explanation for the denial was inadequate, the sufficiency of the explanation is not to be judged in a vacuum but under the terms of the plan. In terms of the plan the statement of reasons was adequate. There was no dispute that Dzinglski met the objective criteria of age and service. There was also no dispute that eligibility under the plan was premised upon the employer's assent and that assent in Dzinglski's case had been withheld.

We reject appellant's attempt to transform the provisions of this early retirement plan into a forum for a wrongful discharge action. To require a fiduciary to disclose the specific reasons for Weirton's determination converts ERISA's disclosure and internal review obligations into a procedure wherein the participant can contest an employer's assessment of its own interests and ultimately, if applicable, the reasons for an employee's discharge. If Dzinglski's claim is that Weirton erred in discharging him for cause rather than permit-

ting him to retire, that too is simply a variation of a wrongful discharge suit. In either case, the reasons for the discharge and Weirton's conduct in ordering it would be placed in dispute.

■ An employee's discharge may properly be litigated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34, the relevant collective bargaining agreement, or exceptions to the employee-at-will doctrine. If there is a wrongful discharge, the remedial provisions of the foregoing actions may well encompass an award of benefits. To subject employers to a potential waterfall of wrongful discharge actions, by permitting plan participants to litigate the correctness of their discharge through the "full and fair review" provision of ERISA, would discourage employers from instituting early retirement plans, which ERISA does not require. *Hlinka*, 863 F.2d at 284.

Dzinglski contends, in essence, that the provision in issue has a high-handed quality because it permits the employer to declare unilaterally that early retirement is "not in its interest." Dzinglski does not allege, however, that the plan here is improper and indeed plans which condition eligibility for early retirement benefits on an employer's determination that an employee's retirement is in its interest are permissible. *Hlinka*, 863 F.2d at 284. There is no requirement that employee benefit plans in collective bargaining contracts, for example, withstand judicial review under a general standard of reasonableness. *UMWA Health & Retirement Funds v. Robinson*, 455 U.S. 562, 574–76, 102 S.Ct. 1226, 1233–34, 71 L.Ed.2d 419 (1982); *Viggiano v. Shenango China Div. of Anchor Hocking Corp.*, 750 F.2d 276, 279–80 (3d Cir.1984). Rather, "Congress left employers much discretion in designing their plans" under ERISA and in determining the level and conditions of benefits. *Hlinka*, 863 F.2d at 283. The judicial role is not to rewrite plan provisions, but to assure that they are fairly administered.

If there is a magisterial tone to the Weirton plan provision it derives from the fact that under ERISA the institution of plans is largely voluntary and the fashioning of plan elements has been left largely in the hands of individual employers. Here Weirton has designed a plan whose primary beneficiaries were apparently those whose Rule-of-65 retirements resulted from disability, layoffs, or force reductions, and not from termination for cause. *See* Weirton Plan, note 1, *supra.* While there may be limits on the extent to which an employer can avoid judicial review of plan administration by shifting the effective decision to deny benefits from a plan fiduciary to itself, we do not think those limits have been exceeded in the context of an early retirement provision which is but one of numerous means of establishing eligibility for such benefits and where all such means are framed in the disjunctive. *See* note 1, *supra.*

In a case analogous to the present one, Bethlehem Steel Corporation sponsored a "70/80" early retirement pension, conditioning eligibility for the benefit on Bethlehem's determination that an applicant's retirement was "in its interest." *Hlinka,* 863 F.2d 279. The plan administrator refused to grant Hlinka a 70/80 pension because Bethlehem declined to make the requisite determination. The Third Circuit concluded that the denial of Hlinka's benefits was proper because Bethlehem did not deem it to be in its interest for Hlinka to retire and such a determination did not violate the spirit of ERISA. *Id.* at 284. The same conclusion is compelled here.

██ The cases on which Dzinglski relies for the proposition that the Committee should have disclosed to him the totality of evidence supporting the denial of benefits are inapposite; in all of them, *Brown v. Retirement Committee of Briggs & Stratton,* 797 F.2d 521, 532–33 (7th Cir.1986); *Short v. Central States, S.E. & S.W. Areas Pension Fund,* 729 F.2d 567, 574–75 (8th Cir.1984); *Richardson v. Central States, S.E. & S.W. Areas Pension Fund,* 645 F.2d 660, 665 (8th Cir.1981); *Wardle v. Central States, S.E. & S.W. Areas Pension Fund,* 627 F.2d 820, 827 & 828 n. 17 (7th Cir.1980), the trustees were vested with the discretionary authority to grant or deny benefits. Here the Retirement Committee is not vested with discretionary authority. The Retirement Committee can only determine whether Dzinglski met the eligibility standards of the plan, one of which was that Weirton determine his retirement to be in its interest. Appellant presented no evidence that Weirton did so and, accordingly, the Retirement Committee had to deny appellant benefits. Pursuant to *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), we review the trustee's decision *de novo,* and we find it conforms to the terms of the plan.

### III.

#### A.

Dzinglski also contends that Weirton's refusal to stipulate his retirement was in its interest violated its fiduciary duty pursuant to 29 U.S.C. § 1104 and that the Retirement Committee did not act for the sole and exclusive benefit of appellant. *Id.* Neither claim is persuasive.

A "person is a fiduciary with respect to a plan to the extent ... he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). When an employer is administering an employee benefit plan, that employer "must satisfy the exacting fiduciary standards imposed by ERISA." *Sutton v. Weirton Steel Division of National Steel Corporation,* 724 F.2d 406, 411 (4th Cir.1983). ERISA, however, does not "prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets." *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986). Business decisions can still be made for business reasons, notwithstanding their collateral effect on prospective, contingent employee benefits. *Sutton v. Weirton Steel,* 567 F.Supp. 1184, 1200–01 (N.D.W. Va.), *aff'd,* 724 F.2d 406 (4th Cir.1983).

Here Weirton's determination of its interests was not fiduciary in nature. It was acting in its capacity as Dzlingski's employer, not as a fiduciary, when it decided to discharge him. The Weirton plan provides that personnel decisions are the exclusive province of Weirton as employer, not as plan sponsor or fiduciary:

> Nothing contained in the Plan shall be deemed to give any Employee, Participant or Contributory Participant the right to be retained in the service of Weirton or to interfere with the right of Weirton to discharge, lay off or suspend any Employee, Participant or Contributory Participant at any time without regard to the effect which such discharge, layoff or suspension shall have upon his rights or the rights of any beneficiary, surviving spouse or co-pensioner under the Plan.

In *Moehle v. NL Industries, Inc.*, 646 F.Supp. 769 (E.D.Mo.1986), the court relied on a similar pension plan provision to conclude that the employer did not have fiduciary duties "when it was acting in its capacity as employer making employment decisions." *Id.* at 779 & n. 5. *See also Hickman*, 840 F.2d at 567 (employer not acting as fiduciary when deciding which employees to terminate); *Ogden v. Michigan Bell Telephone Co.*, 657 F.Supp. 328, 335 (E.D. Mich.1987) (employer not acting as fiduciary when determining appropriate number of employees to be eliminated in force reduction). *But see Fielding v. International Harvester Co.*, 815 F.2d 1254, 1257 (9th Cir.1987).

Likewise, appellant's contention that the Retirement Committee violated its fiduciary duty is without merit. While ERISA requires a fiduciary to discharge its duties "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), the fiduciary must do so "in accordance with the documents and instruments governing the plan...." *Id.* at § 1104(a)(1)(D). As we have noted, the Retirement Committee acted in accordance with the terms of the plan. To adhere to the plan is not a breach of fiduciary duty. *See Hickman*, 840 F.2d at 566; *Moehle*, 646 F.Supp. at 777; *Foltz*, 613 F.Supp. at 639.

## B.

Finally, Dzinglski argues that the Weirton plan violates ERISA's disclosure requirements, 29 U.S.C. § 1022, by failing to disclose that Rule–of–65 provisions are not granted to employees discharged for cause. We find no such violation.

Section 1022 requires that a plan description contain information on "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." Although it is not clear whether § 1022(a) requires a plan to disclose the circumstances under which forfeitable pension benefits like appellant's may be denied, *Phillips*, 799 F.2d at 1472 n. 3, the requirement of Weirton's approval of an application under "mutually satisfactory conditions" is explicitly set forth. *See Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 915 (2d Cir.1982) ("plaintiff had notice of the fact that the lump sum option was at discretion of the [pension] Committee" and "such notice reasonably apprised appellant of his rights under the Plan"); *Ogden*, 657 F.Supp. at 335 ("Having found that the decision to implement MIPP [Management Income Protection Plan] was a business decision, the court must conclude that employees had no right under ERISA to be informed of the conditions which activated MIPP."). To require the plan to disclose all the specific circumstances under which Weirton would assent would "undercut the flexibility ... of the plan," *Pompano*, 680 F.2d at 914, and "foreclose the fair disposition of individual cases presenting unusual or difficult problems." *Romacho v. Stanley*, 567 F.Supp. 1417, 1425 (S.D.N.Y.1983).

For all these reasons, the judgment of the district court is

*AFFIRMED.*