William Harold BELL; Judy S. Norkett; Billy J. Mabry; and Patricia Fuller, individually and as Personal Representative of Estate of Russell Fuller, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 6:91–2650–3.

United States District Court, D. South Carolina.

Nov. 25, 1992.

Ralph Marshall Winn, Larry D. Estridge, Greenville, SC, for plaintiffs.

Thomas Charles Salane, Columbia, SC, Jeffrey Lennard, Margo Weinstein, Sonnenschein, Nath & Rosenthal, Chicago, IL for defendant.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

Plaintiffs, four current or former insurance agents, brought suit against their employer Allstate Insurance Company under Section 1132 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sections 1001 et seq. Plaintiffs contend that Allstate violated ERISA by excluding commissions earned on business ceded to the South Carolina Reinsurance Facility [1] ("Facility") from

1. The South Carolina Reinsurance Facility is the involuntary market mechanism created by the South Carolina legislature to provide automobile

the calculation of benefit levels under Allstate's Agents Pension Plan (the "Pension Plan"), Group Life Insurance Plan and Long Term Disability Insurance Plan (the Group Life Insurance Plan and Long Term Disability Insurance Plan (the Group Life Insurance Plan and Long Term Disability Insurance Plan are collectively referred to as the "Welfare Benefit Plans"). Plaintiffs argue that this practice is a breach of each of the plans. After considering extensive briefing by both sides, the stipulated facts and testimony of witnesses, I find that the challenged practice is instead an essential term of the plans. Accordingly, I hold in favor of and order judgment entered for Allstate.

■ ERISA does not mandate that employers set benefits at certain levels or even that they provide specific benefit plans. Instead, "under ERISA the institution of plans is largely voluntary and the fashioning of plan elements has been left largely in the hands of individual employers." *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1079 (4th Cir.), *cert. denied*, 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989). "Neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide." *McGann v. H & H Music Co.*, 946 F.2d 401, 407 (5th Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992). "An employer is free to develop an employee benefit plan as it wishes because the creation of a benefit plan is a corporate management decision unrestricted by ERISA's fiduciary duties." *Nazay v. Miller*, 949 F.2d 1323, 1328 (3d Cir.1991).

■ ERISA anticipates that employers will act in a dual capacity as both fiduciary to the plan and as employer. Not every decision made by an employer that affects an ERISA plan is subject to ERISA's fiduciary

rules. *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 285 (3rd Cir.1988). When administering an employee benefit plan, the employer must satisfy the fiduciary standards imposed by ERISA. But when not administering the plan or investing the plan's assets, ERISA does not prohibit an employer from acting in accordance with its interests as employer. "Business decisions can still be made for business reasons, notwithstanding their collateral effect on prospective, contingent employee benefits." *Dzinglski,* 875 F.2d at 1079.

■ Business decisions respecting whether to offer a plan in the first place and, if so, what level of benefits to provide are not matters of plan administration or asset management, but rather relate to the design and sponsorship of the plan. *Dzinglski,* 875 F.2d at 1079; *Hlinka,* 863 F.2d at 285; *Bryant v. Food Lion, Inc.,* 774 F.Supp. 1484, 1491 (D.S.C.1991). Such business decisions "are *settlor* acts, not fiduciary acts, and are immune from scrutiny under ERISA's fiduciary standards." *Bryant,* 774 F.Supp. at 1491 (emphasis original).

■ The design decision of what level of benefits to provide is a business decision made by the employer in its capacity as employer—not plan fiduciary. Once Allstate decided to establish pension, group life, and long term disability plans for its employees, Allstate was entitled to choose the level of benefits that it wanted to provide for its employees. Allstate, as an employer, chose to provide a level of benefits to its insurance agents nationwide based only on commissions earned on voluntary business. Allstate designed its plans to effectuate this decision.

The Pension Plan [2] provides that the level of benefits available will be calculated based

---

insurance coverage to persons whom insurers might otherwise choose not to insure. *See* South Carolina Automobile Reparation Reform Act of 1974, act. No. 1177, 1974 *Acts & Jt. Res.,* 2718, 2735. Pursuant to the Act creating the Facility, automobile insurers in South Carolina *must* write automobile insurance for all applicants (regardless of their driving records or perceived risk), but are permitted to cede to the Facility a percentage of the total policies they write. The Facility is not unique to South Carolina. Most states have some form of involuntary market

mechanism—*e.g.,* an assigned risk plan, a joint underwriting association, or, like South Carolina, a reinsurance facility.

**2.** Two versions of the Pension Plan (the "Current Pension Plan" and the "1985–1991 Pension Plan") govern plaintiffs' claims for damages and declaratory relief. The differences between the two plans and the summary plan descriptions for the applicable years are not relevant to the issues here.

on "Eligible Annual Compensation" (for the Current Pension Plan) or "Annual Compensation" (for the 1985–1991 Pension Plan). Both are defined terms and both are defined to exclude commissions earned on business ceded to the Facility. The definitions of "Eligible Annual Compensation" in the Current Pension Plan and of "Annual Compensation" in the 1985–1991 Agents Pension Plan are, in relevant part, identical and provide as follows:

> "*Eligible Annual Compensation [Annual Compensation]*" means the total cash compensation paid to an Agent ... but excluding such items as compensation paid for Plan Business ... and any compensation paid for writing involuntary insurance business (*i.e.* business which is placed through or is reinsured with a plan, association or organization established pursuant to a statute or regulation or a cooperative plan of the insurance industry, to afford coverage for risks not generally acceptable for insurance).

Business ceded to the Facility is involuntary business, reinsured to afford coverage for risks not generally acceptable for insurance. In addition, pursuant to the terms of an executed amendment to plaintiffs' employment contract, business ceded to the Facility also falls within the more specific provision that excludes "Plan Business."

In the Welfare Benefit Plans, Allstate effectuated its business decision regarding the level of benefits by retaining the discretion to determine what comprises the annual compensation upon which the level of benefits is based. The design decision to retain this discretion is plainly set forth in the Welfare Benefit Plans. The Welfare Benefit Plans

provide that the formula for determining benefits available to plaintiffs is based on a multiple or percentage of participant's "Qualified Annual Earnings". Qualified Annual Earnings is defined the Welfare Benefit Plans as "annual compensation *as determined by your Employer.*" [3]

■ ERISA permits employers to design plans that leave the employer such discretion. " 'Congress left employers much discretion in designing their plans' under ERISA and in determining the level and conditions of benefits." *Dzinglski*, 875 F.2d at 1078 (quoting *Hlinka*, 863 F.2d at 283). In fact, ERISA permits an employer to reserve the right to determine welfare benefit levels on a case-by-case basis, provided the limitation is explicitly stated as part of the plan. *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 77–79 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992).

Allstate informed the plan participants that they had no guaranteed level of benefits and that the level would be determined by their employer. For all of its agents nationwide, Allstate has consistently determined that commissions earned on involuntary market business (such as business ceded to the Facility) are excluded from the calculation of benefits.[4]

■ Employer design decisions with respect to the level of benefits provided under ERISA-qualified plans are not reviewed under ERISA fiduciary standards. "The only substantive review" that a court may conduct in regard to an employer's decision as to how to design an ERISA-qualified plan "is to

---

**3.** Unlike the Pension Plan, which is made available only to agents and so contains a definition of eligible compensation specific to agents, the Welfare Benefit Plans are made available to all Allstate employees nationwide.

**4.** This determination is neither arbitrary nor individual. Testimony at trial established that Allstate has never included commissions earned on business ceded to the Facility or written through any other involuntary market mechanism in the calculation of any benefits. This consistent practice should be known to all agents.

Plaintiffs argue that they (as agents in South Carolina) are nevertheless uniquely harmed by this consistent practice because they write more

involuntary business than do agents in other states. Based on testimony presented at trial, this contention is untrue, and even if ERISA fiduciary standards applied, would be irrelevant. As to its truth, the exclusion of commissions earned on involuntary business tends to equalize the benefits paid to agents nationwide—especially with respect to South Carolina agents who earn substantially more in commissions on involuntary automobile insurance than, for example, Allstate agents just across the state line in North Carolina. Second, even under a fiduciary test, the issue is whether the provision has been applied consistently, not whether it has a consistent effect.

assess [the plan's] compliance with the policies underlying ERISA." *Nazay*, 949 F.2d at 1338. I hold that the challenged practice is a design decision effectively set forth in the Pension Plan and Welfare Benefit Plans. Because these plans comply with the policies underlying ERISA, judgment must be entered in favor of Allstate.

 Even if this case did not involve Allstate's design decisions and could not be resolved on that basis, entry of judgment in favor of Allstate would nevertheless be warranted because the administrators' disputed interpretations are in accordance with the unambiguous terms of the plans.[5]

The Pension Plan clearly provides that benefits are calculated based on "Eligible Annual Compensation" or "Annual Compensation". Both are specifically defined to unambiguously exclude from the calculation of benefits compensation paid for involuntary insurance business, such as commissions earned on business ceded to the Facility. This clear language ends the inquiry.

The Welfare Benefit Plans plainly provide that the formula for determining benefits available to plaintiffs is based on a multiple or percentage of participant's "Qualified Annual Earnings". Qualified Annual Earnings is defined as "annual compensation as determined by your Employer." From this definition, it is clear that Allstate employees are entitled to life insurance and long term disability benefits calculated based on *Qualified* Annual Earnings—not total compensation (which, for agents, would include not only commissions earned on business ceded to the Facility, but also prizes, awards, certain special allowances and promotions, and other forms of compensation). It is also clear that Qualified Annual Earnings is an amount to be determined by the agent's employer—Allstate.

The fact that Allstate's specific determination for each plan participant is not set forth in the Welfare Benefit Plans does not render the plans ambiguous or otherwise deficient. ERISA does not require that level of specificity in the plan. Moreover, as discussed above, Allstate's determination for its agents was uniform throughout the country, long-standing and well known to the agents.

Under the express terms of the Pension Plan and Welfare Benefit Plans, plaintiffs are not entitled to have the commissions they are paid on involuntary market business ceded to the Facility included in the calculation of the level of their benefits. Plaintiffs have and will get all the benefits they are entitled to under the plans. Judgment shall be entered in favor of Allstate.

AND IT IS SO ORDERED.

---

**5.** Each of the plans at issue here gives the administrator (or its assignee) the power to interpret the plans' terms. Because the plans give the administration such discretion, their interpretation of ambiguous plan terms is afforded deferential review and will not be disturbed if reasonable. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir.1989). The parties have spent much time and many pages arguing the appropriate application of the abuse of discretion standard here. Because I find the disputed provisions of the Pension Plan and Welfare Benefit Plans unambiguous, I need not resolve this issue.