

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-1994

# Haberern v. Kaupp Vascular Surgeons Ltd. Def. Ben. Plan

Precedential or Non-Precedential:

Docket 93-1892

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Haberern v. Kaupp Vascular Surgeons Ltd. Def. Ben. Plan" (1994). *1994 Decisions.* Paper 26.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/26

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-1892


RUTH HABERERN

v.

KAUPP VASCULAR SURGEONS LTD. DEFINED BENEFIT PENSION PLAN;
LEHIGH VALLEY VASCULAR SURGEONS LTD. RETIREMENT PLAN;
LEHIGH VALLEY VASCULAR SURGEONS LTD.;
KENNETH M. MCDONALD, M.D., TRUSTEE

        Kaupp Vascular Surgeons Ltd. Defined Benefit Pension
        Plan and Trust Agreement, Lehigh Valley Vascular
        Surgeons Ltd. Retirement Plan, Lehigh Valley Vascular
        Surgeons Ltd. and Kenneth M. McDonald, Trustee,

                        Appellants


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 88-01853)

Argued March 28, 1994

BEFORE:  GREENBERG, COWEN, and NYGAARD, Circuit Judges

        (Filed:   May 25, 1994)


                        Lawrence J. Fox (argued)
                        Paul R. Fitzmaurice
                        Drinker Biddle & Reath
                        Philadelphia National Bank
        Building
                        1345 Chestnut Street
                        Philadelphia, PA 19107-3496

                        Attorneys for Appellee

                        Susan Katz Hoffman (argued)
                        Richard S. Schlegel
                        Andrew R. Rogoff
                        Thomas J. Momjian
                        Pepper, Hamilton & Scheetz
                        3000 Two Logan Square


1

Eighteenth and Arch Streets
Philadelphia, PA 19107-2799

Attorneys for Appellants
Steven S. Zaleznick
Cathy Ventrell-Monsees
Mary Ellen Signorille
Warren Gorlick
American Association of
Retired Persons
601 E Street, N.W.
Washington, D.C. 20049

Attorneys for Amicus Curiae
American Association of
Retired Persons

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. OVERVIEW

The four appellants, Lehigh Valley Vascular Surgeons,

Ltd. ("Lehigh Valley"), two employee pension plans established by

Lehigh Valley, Kaupp Vascular Surgeons Ltd. Defined Benefit

Pension Plan and Trust Agreement and Lehigh Valley Vascular

Surgeons Ltd. Retirement Plan, a defined contribution plan, and

the plans' trustee, Kenneth M. McDonald, M.D., appeal from a

final judgment entered by the district court in favor of the

appellee, Ruth Haberern, a retired employee of Lehigh Valley.[0]

The district court entered the judgment in accordance with its

opinion reported as Haberern v. Kaupp Vascular Benefits Plan and

---

[0]We recently have explained the distinction between defined
benefit and defined contribution plans. See Malia v. General
Elec. Co., No. 92-7487, slip op. at 5 n.2 (3d Cir. May 13,
1994).

2

Trust Agreement, 822 F. Supp. 247 (E.D. Pa. 1993).  The total judgment was for $614,165.99, but the court broke it down into segments.  Haberern brought this action under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover compensation allegedly due from Lehigh Valley and benefits she claimed under the plans, and to enforce her rights under the plans.

The appellants make five challenges to the district court's opinion and judgment.  They contend that the district court erred when it concluded that Lehigh Valley acted as an ERISA fiduciary when it reduced Haberern's salary by eliminating her compensation based on Lehigh Valley's gross receipts and it contemporaneously created the defined benefit plan.  They also contend that the district court erred in concluding that Lehigh Valley breached its fiduciary duty in paying a portion of Haberern's compensation as a bonus and in making assurances to Haberern regarding her benefits under the defined benefit plan, without explaining that the designation of part of her compensation as a bonus would adversely affect her benefits. While these assurances were inconsistent with the terms of the plan, the appellants contend that the court nevertheless erred, as the terms were in the plan and also were described in the summary plan description which the appellants provided to Haberern.  In the appellants' view, these disclosures relieved them of any duty to explain the plan further.  Alternatively, the appellants argue that recovery on this claim is barred because

3

damages for a breach of fiduciary duty cannot be awarded to a plan beneficiary under section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

The appellants also challenge the district court's conclusion that Lehigh Valley violated section 510 of ERISA, 29 U.S.C. § 1140, by amending its defined benefit plan to eliminate Haberern's life insurance coverage while simultaneously increasing the life insurance for other beneficiaries. Finally, the appellants challenge the district court's conclusion that Haberern requested information about her benefits under the defined benefit plan which appellants, in violation of section 105(a) of ERISA, 29 U.S.C. § 1025(a), did not provide and the court's consequent assessment of $191,300 in penalties for the appellants' failure to provide that information.[0] The district court also concluded that the appellants breached a fiduciary duty under ERISA by requiring Haberern to sign a release before they distributed her accrued benefits under the defined contribution plan, but the appellants do not challenge that ruling.

We agree with the appellants on all issues they raise. In particular, we find that the reduction in Haberern's salary was a management decision for which they cannot be liable under

---

[0]The district court also found that the appellants violated section 101(a)(1), 29 U.S.C. § 1021(a)(1), by failing to furnish Haberern a complete summary plan description of the defined benefit plan, but we need not consider this point as the court imposed the penalty only for the appellants' failure pursuant to section 105(a)(1) to provide a statement showing how they computed Haberern's defined benefit plan distribution.

4

ERISA.  Additionally, we conclude that Haberern cannot recover under section 502(a)(1)(B) of ERISA for the appellants' alleged breach of fiduciary duty in designating part of her compensation as a bonus and in not informing her of the consequences of that designation with respect to her retirement benefits.  We also hold that the appellants did not violate section 510 of ERISA, 29 U.S.C. § 1140, when they amended the defined benefit plan to eliminate life insurance coverage for plan beneficiaries over age 56.  Finally, we determine that the district court's conclusion that a letter Haberern's attorney sent to the appellants' attorney was a request for information within the meaning of section 105(a), 29 U.S.C. § 1025(a), is erroneous as a matter of law.  For these reasons, we will reverse the district court's judgment awarding damages on all these grounds.

We make one further preliminary observation.  In our review of this case, we have noted a comment in the appellants' brief that the district court barely distinguished among the appellants in reaching its conclusions.  Furthermore,  we recognize that the district court may have entered judgment on certain claims against particular appellants not liable on those claims.  Nevertheless, in view of our conclusion that we must reverse on all issues they raise, for the most part we do not find it necessary to distinguish among the appellants.  Accordingly, usually we will refer to the appellants collectively rather than individually.

5

## II. BACKGROUND

The historical facts of this case are not in dispute and, as the district court discussed them at length in its opinion, we need not repeat them in detail. We will, however, set forth matters of particular significance to this opinion. Haberern began working for Kaupp Vascular Surgeons Ltd. on July 1, 1974, as a secretary-bookkeeper. Kaupp's principals, Harry A. Kaupp, M.D., and McDonald, changed its corporate name to Lehigh Valley Vascular Surgeons Ltd. in 1984, and as a matter of convenience, we refer to Kaupp Vascular Surgeons and Lehigh Valley Vascular Surgeons as "Lehigh Valley." Haberern worked full-time for Lehigh Valley until her retirement on January 2, 1985, and from January 3, 1985 to December 16, 1986, she continued working part-time. During her employment, she never had a written employment contract.

In 1974, Haberern and Kaupp were Lehigh Valley's only employees. Haberern's initial compensation included an annual salary of $11,500, a percentage of Lehigh Valley's gross receipts, status as a beneficiary of the defined contribution pension plan, and health insurance. At that time, the defined contribution plan was known as the Kaupp Vascular Surgeons Ltd. Employee Pension Plan, but Lehigh Valley later changed the plan's name to Lehigh Valley Vascular Surgeons Ltd. Retirement Plan. Originally Kaupp and his wife were the trustees of the defined contribution plan, but McDonald later became the trustee. Lehigh

6

Valley paid Haberern's salary bi-weekly, and it paid her percentage of gross receipts at the end of each fiscal year.

In 1976, McDonald joined Lehigh Valley and, effective September 1, 1979, McDonald and Kaupp established the defined benefit plan. When they established the defined benefit plan, McDonald and Kaupp calculated the amount necessary to fund it, and concluded that based on Haberern's salary of $19,000, Lehigh Valley would have to contribute approximately $10,000 annually on her behalf. They regarded this contribution as excessive, so in 1980 they eliminated the portion of Haberern's compensation calculated on Lehigh Valley's gross receipts. This change reduced Haberern's overall compensation for the fiscal year ending June 30, 1979, from $18,358 to $14,429, and required Lehigh Valley to contribute $5,500 to the plan on her behalf.

The appellants did not tell Haberern that the defined benefit plan required Lehigh Valley to make the contributions to the plan on her behalf. Though the appellants provided Haberern with a copy of the summary plan description, the pages regarding contributions to the plan and the provisions for insurance, as well as the table of contents were omitted, and the appellants did not provide her with a complete copy of the summary plan description until 1987. Beginning in 1980, Lehigh Valley designated part of Haberern's compensation as "salary" and part as "bonus," and it gave the same designations to Kaupp's and McDonald's compensation. This allocation was significant because benefits under the defined benefit plan were predicated on salary excluding any bonus. Accordingly, this allocation reduced the

7

benefits which otherwise would have been due to Haberern, and it also reduced Lehigh Valley's contributions to the plan. Haberern, 822 F. Supp. at 254.

The defined benefit plan provided for life insurance equivalent to 30.58 times the participant's monthly retirement benefit. On October 21, 1980, Lehigh Valley amended the plan to eliminate life insurance for employees over age 56, a category which included only Haberern. However, the life insurance for the other beneficiaries was tripled. The appellants claim that they made these life insurance changes to save money, but the district court rejected this claim.

In 1984, Haberern informed the appellants that she intended to retire. Although she did retire on January 2, 1985, the plans did not pay her pension benefits immediately. Instead, on July 18, 1986, the appellants requested that Haberern sign releases as a condition for receiving distributions from both plans. Haberern refused to sign the releases, and consequently the appellants refused to pay her any benefits. Then in July 1987, the appellants sent Haberern a check for $42,986.24, which they stated represented her full benefits under the defined benefit plan. But they still refused to pay Haberern her benefits under the defined contribution plan as she did not provide the release.

Haberern filed the complaint in this action on March 3, 1988, pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B). She alleged that the appellants breached their fiduciary duties and discriminated against her by withholding her

8

pension benefits, eliminating her percentage of gross receipts, dividing her compensation between salary and bonus, amending the defined benefit plan to eliminate her life insurance coverage, and failing to respond to her request for information. After a three-day bench trial, the district court found the appellants liable for life insurance coverage, benefits under both the defined benefit and defined contribution plans, lost salary, and penalties for failure to provide information concerning her benefits under the defined benefit plan. Haberern, 827 F. Supp. at 267-68. As we have indicated, the appellants appeal from all aspects of the district court's final judgment except the finding that they breached a fiduciary duty under ERISA by requiring Haberern to sign a release before they distributed her accrued benefits under the defined contribution plan.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We are exercising plenary review, as we are deciding this case through the application of legal precepts on the facts as found by the district court. While the district court's assessment of penalties for the appellants' failure to comply with section 105(a), 29 U.S.C. § 1025(a), in some circumstances might be reviewed under an abuse of discretion standard, we are exercising plenary review on the point because we conclude that the letter from Haberern's attorney cannot be construed as a request under that section. Cf. Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1279 (3d Cir. 1991) (construction of collective bargaining agreement reviewed de novo).

9

III. DISCUSSION

A. Elimination of Haberern's Gross Receipts
   Percentage and the Funding of the Defined Benefit
   Plan

The appellants first challenge the district court's finding that Lehigh Valley breached its fiduciary duty under ERISA when it eliminated the gross receipts percentage component of Haberern's compensation. This alleged breach focused on the appellants' establishment in 1979 of the defined benefit plan which provided benefits calculated on certain factors such as age, compensation, and years of employment. Prior to the creation of the defined benefit plan, Lehigh Valley paid Haberern her salary bi-weekly and her percentage of its gross receipts annually. Haberern claims that ERISA compelled the appellants to include her in the plan, and asserts that to include her, but to keep down its contributions to the plan, the appellants eliminated Haberern's percentage of gross receipts. The district court concluded:

> In 1980 Lehigh Valley eliminated the portion of [Haberern's] compensation that was calculated on the basis of Lehigh Valley's gross receipts thus reducing [Haberern's] compensation from $18,358 for the fiscal year ending June 30, 1979 to $14,429 for the fiscal year ending August 31, 1980. (Lehigh Valley had changed its fiscal year from July to June to September to August.) Based upon a salary of $19,000, Lehigh Valley would have to contribute approximately $10,000 on behalf of [Haberern] into the newly formed Defined Benefit Plan. The doctors felt this was too much. Therefore, they reduced her salary to $14,400, thus requiring Lehigh Valley to contribute only $5,500 to the Defined Benefit Plan. <u>By virtue of the elimination of her receivables percentage, [Haberern] was taking her salary and funding her Defined Benefit Plan.</u>

10

<u>Haberern</u>, 822 F. Supp. at 254 (citations omitted) (emphasis added).

The district court also found that the appellants did not inform Haberern that Lehigh Valley was required to make the contributions to the plan. <u>Id</u>. In fact, the district court found that in 1980 the appellants provided Haberern with a summary plan description but omitted the pages stating Lehigh Valley was required to make the full contribution required to fund the plan on her behalf.

Based on these facts, the district court held that the appellants breached their fiduciary duty. In computing damages, the court concluded that the appellants were liable not only for the lost compensation predicated on the 1980 salary reduction, but also for the reduction of benefits under the defined benefit plan, which, but for the wrongdoing, would have been calculated on a higher salary, and the reduction of benefits under the defined contribution plan, which, but for the wrongdoing, would have reflected contributions based on a higher salary. <u>Id</u>. at 257.

However, the court also concluded that the reduction in salary did not violate ERISA's anti-discrimination provisions. 29 U.S.C. § 1140. In this regard, in a pretrial opinion granting the appellants summary judgment on Haberern's discrimination claim relating to the reduction in salary, the court noted:

> In this case, the reduction in [Haberern's] salary . . . [was] consistent with the treatment of all other plan participants, including the physician plan participants. The payroll records furnished by defendants

11

established that the salaries of all plan participants were substantially reduced in 1980.

App. at 136 (citations omitted).

The appellants raise two challenges to the district court's conclusion that in eliminating Haberern's percentage of gross receipts and creating the defined benefit plan they violated their fiduciary duties under ERISA. First, they argue that they took these steps as employers, and not as fiduciaries, and thus they did not owe a fiduciary duty to Haberern. Second, they argue that Haberern's status as an at will employee allowed them to change her compensation at any time.[0] Accordingly, they contend that by continuing to work after 1980 she accepted the modified terms of her employment. The district court responded to these points by indicating that "simply because [Haberern's] employment was at will does not entitle Lehigh Valley to violate ERISA." 822 F. Supp. at 260.

The appellants rely on section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), and on several of our opinions for the proposition that when an employer acts in a management capacity, its business decisions are not regulated by ERISA. See Nazay v.

---

[0]In our discussion of appellants' division of Haberern's compensation into salary and bonus, we consider whether a plan beneficiary may bring an action under section 501(a)(1)(B) of ERISA for breach of fiduciary duty. We do not address that point in this section of our opinion, as the appellants do not contend that Haberern could not bring an action for breach of fiduciary duty predicated on the appellants' elimination of Haberern's compensation based on gross receipts, if the elimination was wrongful. Of course, we are holding that the elimination of the compensation based on gross receipts does not implicate any fiduciary obligation under ERISA which the appellants might have owed Haberern.

<u>Miller</u>, 949 F.2d 1323, 1329 (3d Cir. 1991); <u>Hozier v. Midwest Fasteners, Inc.</u>, 908 F.2d 1155, 1158 (3d Cir. 1990). <u>See</u> <u>also</u>, e.g., <u>Malia v. General Elec. Co.</u>, No. 92-7487, slip op. at 9-10 (3d Cir. May 13, 1994). Section 404(a)(1)(D) imposes a fiduciary duty on a trustee when administering an ERISA plan to act in accordance with the documents and interests governing the plan, but it does not impose fiduciary duties on an employer making a management decision. The appellants contend that because of Haberern's at will status, their business decision affecting her compensation and establishing the defined benefit plan was not subject to ERISA's fiduciary provisions, "notwithstanding [its] collateral effect on prospective, contingent employee benefits." Brief at 15 (<u>quoting</u> <u>Bell v. Allstate Ins. Co.</u>, 822 F. Supp. 1222, 1224 (D.S.C. 1992)). Haberern responds that the appellants' contentions are without merit because ERISA preempts state laws relating to the protection of employee pension benefits and, accordingly, regardless of the appellants' rights under state law, their conduct violated their ERISA fiduciary duties.

Haberern's reliance on ERISA preemption is misguided. She cites <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 111 S.Ct. 478 (1990), in support of her position. In <u>Ingersoll-Rand</u>, the plaintiff brought a state common law claim for unlawful discharge in a Texas state court. <u>Id</u>. at 136, 111 S.Ct. at 481. He claimed that his employer discharged him to avoid making contributions on his behalf to a pension plan. The trial court granted the employer summary judgment, and the state court of

13

appeals affirmed, holding that the plaintiff's employment was terminable at will.  The Texas Supreme Court reversed and remanded for trial.  That court held that under Texas law, an at will employee could sue for wrongful discharge if he could establish that the employer's principal reason for the discharge was to avoid paying pension benefits or to avoid contributing to a plan.

The United States Supreme Court granted certiorari and reversed.  The Court noted that Congress expressly included a broad preemption provision in ERISA, section 514(a), 29 U.S.C. §1144(a), which provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

The Court noted "'[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'"  Ingersoll-Rand, 498 U.S. at 139, 111 S.Ct. at 483 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900 (1983)).

In the Texas case, the plaintiff was required to prove that the principal reason for his termination was to interfere with a plan.  This required him to plead, and the court to find, that there was an ERISA plan and that the employer had a pension-defeating motive in discharging him.  Because this inquiry was directed to the existence of a plan, the "judicially created

14

cause of action 'relate[s] to' an ERISA plan." Ingersoll-Rand, 498 U.S. at 140, 111 S.Ct. at 483. Thus, it was preempted.

The Court noted, however, that ERISA's preemptive force has limits. Thus, in Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211 (1987), the Court had held that ERISA did not preempt a Maine law which required the payment of severance benefits because the state law did not require the establishment or maintenance of an ongoing plan. Ingersoll-Rand, 498 U.S. at 139, 111 S.Ct. at 483. In the Texas case, this limitation did not apply because the case did not involve "a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." Id.

The limitation on the preemptive force of ERISA recognized in Fort Halifax and Ingersoll-Rand is applicable in this case. In Pennsylvania, absent a statutory or contractual provision to the contrary, employment relationships presumptively are at will. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 658 (3d Cir. 1990). This presumption is unrelated to the existence vel non of any pension plan. Of course, it follows that if an employer may terminate an employee without cause, it has the right to decrease her compensation, as this constitutes a more modest change in the employment relationship. Clearly, this right to decrease compensation "functions irrespective of . . . the existence of ERISA," and therefore is beyond the scope of ERISA preemption. Ingersoll-Rand, 498 U.S. at 139, 111 S.Ct. at 483.

15

Accordingly, inasmuch as ERISA does not preempt the appellants' state law management rights to determine Haberern's salary, the critical question is whether they were acting in their management capacity when they reduced Haberern's salary by eliminating the portion of her compensation based on gross receipts and contemporaneously created the defined benefit plan. If they were, then they breached no duty under ERISA for, as they contend, ERISA does not impose fiduciary duties on employers acting in their management capacity. 29 U.S.C. § 1104(a)(1).

Nazay v. Miller, 949 F.2d 1323, is instructive. In Nazay, a retired employee brought suit against his former employer under ERISA to recover the balance due for his hospitalization after the employer's health plan only partially paid a hospital bill he had incurred. Id. at 1325-27. The employee had admitted himself to a hospital after his physicians agreed that it was imperative that he be treated for a heart condition. Though the employee was aware that the plan required certification by the plan administrator prior to a hospital admission, he nonetheless did not notify the administrator before he entered the hospital. Furthermore, neither his doctors nor anyone else notified the administrator of the admission during his stay.

The certification process enabled the administrator to consider whether hospitalization was necessary and to consider alternatives to hospitalization. Additionally, it allowed the patient and hospital to ascertain how much of the proposed hospitalization would be reimbursed. The plan included a penalty

16

amounting to 30% of the otherwise covered expenses if the employee failed to obtain preadmission certification. Id. at 1326.

The district court held that the penalty provision was arbitrary and capricious. Id. at 1325. Further, the court held it would not enforce any provision in a benefit plan that denied benefits, unless the employer could establish that the participant's failure to comply with the provision prejudiced the plan. Id.

We reversed, concluding an employer is free to develop an employee benefit plan as it wishes because when it does so it makes a corporate management decision, unrestricted by ERISA's fiduciary duties. Id. at 1328-31. In discussing the nature of an employer's fiduciary duties under ERISA, we noted "[i]n the words of the Supreme Court, ERISA was 'designed to promote the interests of employees and their beneficiaries in employee benefit plans.' However, as we have observed on several occasions, ERISA's concern is with the administration of benefit plans and not with the precise design of the plan." Id. at 1329 (emphasis in original) (citations omitted). Therefore, if an employer also acts as a plan administrator, "ERISA permits [it] to wear two hats, and . . . [it] assume[s] fiduciary status only when and to the extent that [it] function[s] in [its] capacity as plan administrator[], not when [it] conduct[s] business that is not regulated by ERISA." Id. (citations and internal quotation marks omitted). Although we recognized that the determination of whether an employer acts as a business manager or plan

17

administrator involves a sensitive analysis, we concluded that an employer's inclusion of a penalty provision in a benefits plan is a management decision.  Id.

Earlier, in Trenton v. Scott Paper Co., 832 F.2d. 806 (3d Cir. 1987), cert. denied, 485 U.S. 1022, 108 S.Ct. 1576 (1988), we endorsed the design/administration distinction.  In that case, Scott Paper Company had created a Salaried Employee Retirement Plan ("SERP") as well as a Scott Highly Accelerated Retirement Program ("SHARP").  Id.  Scott created SHARP to provide an incentive to salaried employees at certain of its overstaffed facilities to retire early.  Id.  But some of the salaried employees eligible for retirement under SERP were not eligible for the more favorable treatment under SHARP.  The plaintiffs, a class of employees covered by SERP but not by SHARP, brought suit alleging that their exclusion violated ERISA. The district court granted the defendants' motion for summary judgment and we affirmed.

The plaintiffs argued that the amending of SERP to include SHARP was an ERISA administration decision.  After considering who had the authority to design and implement SHARP, we disagreed.  In reaching our conclusion, we indicated that "[i]f SHARP had been a part of SERP when SERP was implemented, SHARP would clearly be part of the design of the plan."  Id. at 809 (emphasis in original).  We then stated that, "[w]e think it clear in this action that Scott, not the Retirement Board, had the sole authority to determine who would be eligible for SHARP. The design of the SHARP plan was purely a corporate management

18

decision." Id.  Accord Bell v. Allstate Ins. Co., 822 F. Supp. 1222 (D.S.C. 1992) (Allstate's decision not to include commissions from state auto reinsurance mechanism was design decision outside the scope of ERISA).

It is quite plain from our opinions that the appellants' decision to reduce Haberern's compensation by eliminating her percentage of gross receipts and to establish the defined benefit plan was managerial in character.  The fact that this decision may not have been in Haberern's interest makes no difference.  Furthermore, the district court's statement that, contrary to the terms of the defined benefit plan, the appellants required Haberern to fund her own benefits is nothing more than the court's pejorative characterization of the undisputed facts.  Accordingly, we cannot sustain the court's determination by treating it as a factual finding subject to deferential review.[0]  Thus, the appellants are not liable for their decision to reduce

---

[0]The fallacy in the argument that Haberern funded the defined benefit plan may be demonstrated by considering the collective bargaining process.  In contract negotiations, the employees' representative might obtain a pension plan fully funded by the employer and in return might agree to accept a less favorable wage structure than it could have obtained if the employer had not created a pension plan.  In that situation, it hardly could be argued fairly that by paying the negotiated wage scale the employer has required the employees to fund the pension plan.  In principle, the situation here is no different because the appellants' decision to set Haberern's compensation in light of their expenses for a pension plan is identical to an employer's decision to accept a collective bargaining agreement that adds to its pension costs but moderates wages.  On the other hand, this case would have been different if the appellants had withheld money from Haberern's established salary for payment into the defined benefit plan.

19

Haberern's compensation and contemporaneously to establish the defined benefits plan.

Haberern also argues that the appellants did not inform her that her participation in the plan was voluntary. But this point is immaterial. While we will assume without deciding that Haberern could have refused to participate in the defined benefits plan, and we further will assume without deciding, as she contends, that the plan could not have become effective without her participation, it does not follow that the appellants could not have reduced her salary without regard for whether she participated in the defined benefit plan. Quite to the contrary, under Pennsylvania law they had the right to decrease her compensation whether or not they had established a benefits plan. Therefore, Haberern's only remedy if she had been unwilling to continue her employment for the compensation offered was to resign. Of course, she did not do so. Thus, it is clear that Haberern should not have recovered a judgment against the appellants by reason of their elimination of her gross receipts percentage and their method of the funding of the defined benefit plan.

              B. The Designation of Haberern's Compensation as
                      Salary and Bonus

The district court imposed substantial liability on the appellants due to Lehigh Valley's division of Haberern's compensation into salary and bonus. It found that Haberern's salary throughout the period during which the defined benefits plan was in effect, September 1, 1979 to August 31, 1984,

20

remained at $14,428, and that the appellants paid her bonuses during that time. Lehigh Valley first divided her compensation into salary and bonus in 1980, but it did this for Kaupp and McDonald as well. Haberern, 822 F. Supp. at 254. The division was significant because pension benefits were based on salary but not bonuses. Id. But on a pretrial motion for summary judgment, the district court determined that this designation was not discriminatory in violation of 29 U.S.C. § 1140. In this regard, the court explained:

> Further, all plan participants took a portion of their compensation as 'bonus.' Indeed, the bonuses paid to physician plan participants were a greater portion of their total compensation than the bonuses paid to plaintiff.

App. at 137 (citations omitted).

Furthermore, the district court acknowledged that an employer may define compensation for purposes of calculation of pension benefits to include certain items and to exclude others. Haberern, 822 F. Supp. at 261. However, if an employer amends a plan to alter the definition of compensation, it must provide adequate notice to the beneficiaries. See section 204(h) of ERISA, 29 U.S.C. § 1054(h). In this case, there was no amendment, as the original plan excluded bonuses from the definition of compensation. Thus, the district court recognized that the notice requirements of section 204(h) did not apply.

Nonetheless, the district court effectively imposed a notice requirement, concluding that:

> when Lehigh Valley established the Plan, they assured [Haberern] that she would receive a pension benefit equal to her salary upon retirement. Because

21

> Defendants Lehigh Valley and McDonald <u>failed to inform</u> [Haberern] that characterizing a portion of her compensation as a bonus would reduce significantly her pension benefits, they breached their fiduciary duties under ERISA.

<u>Haberern</u>, 822 F. Supp. at 261 (emphasis added).

Based on its conclusion that the appellants breached their fiduciary duties, the district court ultimately awarded damages under section 502(a)(1)(B) for the decreased benefits for which Haberern was eligible under the defined benefit plan and the defined contribution plan. Thus, the court seems to have concluded that the appellants misrepresented the method of computing Haberern's retirement benefits and it further concluded that their failure to inform her of the significance of the division of her compensation into salary and bonus was a breach of fiduciary duty.

Haberern supports the district court's conclusions by relying on a line of cases for the proposition that fiduciaries breach their duties of loyalty and care if they mislead plan participants or misrepresent the terms or administration of a plan. See <u>Berlin v. Michigan Bell Tel. Co.</u>, 858 F.2d 1154, 1163 (6th Cir. 1988); <u>Rosen v. Hotel & Restaurant Employees & Bartenders Union</u>, 637 F.2d 592, 599-600 (3d Cir. 1981), <u>cert. denied</u>, 454 U.S. 898, 102 S.Ct. 398 (1981); <u>Eddy v. Colonial Life Ins. Co.</u>, 919 F.2d 747, 750 (D.C. Cir. 1990). The appellants respond that these cases are inapplicable because the district court never made an explicit finding of misrepresentation, and thus they argue that Haberern's only possible cause of action

22

under ERISA is promissory estoppel. Reply Brief at 8 n.8. (citing Smith v. Hartford Ins. Group, 6 F.3d 131, 141 (3d Cir. 1993)). We disagree with the appellants' contention that the only cause of action upon which Haberern could recover is promissory estoppel. We note that in Smith, we cited Fischer v. Philadelphia Elect. Co., 994 F.2d 130, 133-34 (3d Cir.), cert. denied, 114 S.Ct. 622 (1993), in which we held an employer can be liable under ERISA in its fiduciary capacity both on breach of fiduciary duty and equitable estoppel theories for affirmative material misrepresentations. See Smith, 6 F.3d at 141 n.13.

However, we need not remand the matter to the district court for clarification because we agree with the appellants that Haberern may not recover damages for a breach of fiduciary duty under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The district court made it clear that section 502(a)(1)(B) is implicated because it noted that Haberern "brings this action pursuant to ERISA, 29 U.S.C.A. § 1132(a)(1)(B) (West 1985) to recover lost salary and benefits owed to her under the terms of the Plans and to enforce her rights under terms of the Plans." Haberern, 822 F. Supp. at 257.

Section 502(a) of ERISA provides in relevant part that a civil action may be brought:
>  (1) by a participant or beneficiary –
>  ...
>  > (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
>  (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

23

(3) by a participant, beneficiary ... to obtain other appropriate equitable relief...

29 U.S.C. § 1132(a).

Section 409(a) of ERISA establishes liability for a fiduciary. The section provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a).

In McMahon v. McDowell, 794 F.2d 100 (3d Cir.), cert. denied, 479 U.S. 971, 107 S.Ct. 473 (1986), we interpreted section 409(a) in the context of section 502(a)(1)(B). In McMahon, the plaintiffs brought suit under section 502(a)(1)(B) and section 502(a)(2) to recover damages individually from plan fiduciaries for their failure to collect delinquent pension plan contributions, which failure the plaintiffs alleged was a breach of fiduciary duty. McMahon, 794 F.2d at 108.[0] We found the cause of action inappropriate under section 502(a)(1)(B), but allowed the suit to proceed under section 502(a)(2) so that the plaintiffs could recover damages ". . . for the benefit of the plan. . . ." 794 F.2d at 109.

---

[0]McMahon also involved other claims not germane here.

24

With respect to the cause of action under section 502(a)(1)(B), we noted that the plaintiffs characterized the claim as one brought to "recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 794 F.2d at 109 (quoting section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)). We noted that "actions brought under Section 502(a)(1)(B) are personal in nature and 'seek to declare the plaintiff beneficiary's rights under the plan, to recover benefits personally due him, or to enforce his personal rights.'" 794 F.2d at 109 (quoting Livolsi v. R.A.M. Construction Company, 728 F.2d 600, 602 (3d Cir. 1984)).

Additionally, we noted that in Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140-42, 105 S.Ct. 3085, 3089-90 (1985), the Supreme Court held that section 409 of ERISA does not authorize a private right of action for compensatory relief. McMahon, 794 F.2d at 109. Noting the conflict between section 409, which establishes liability for an ERISA fiduciary but does not authorize a private right of action for compensatory damages, and section 502(a)(1)(B), which authorizes a private right of action for a beneficiary to enforce her own rights, we concluded that the plaintiffs could not proceed under section 502(a)(1)(B) in a suit to recover damages for a breach of fiduciary duty. Id.

This analysis applies here. The district court concluded that the appellants breached a fiduciary duty by making assurances to Haberern and then failing to inform her that those

25

assurances were incorrect.  <u>Haberern</u>, 822 F. Supp. at 261, 267. Although in this case the wrongdoing affected Haberern more directly than the wrongdoing affected the plaintiffs in <u>McMahon</u>, we are unpersuaded that we should depart from <u>McMahon's</u> holding that section 502(a)(1)(B) is unavailable in actions for breach of fiduciary duty.[0]

---

[0]In an opinion dated June 26, 1989, on a motion for summary judgment made by the appellants, the district court pointed out that Haberern stated that her claim with respect to the bonus was brought under section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). App. at 140.  The court made the same observation in its reported opinion.  <u>See</u> <u>Haberern</u>, 822 F. Supp. at 257.  Thus, we do not reach the question whether Haberern's misrepresentation argument could be upheld under section 502(a)(3), 29 U.S.C. § 1132(a)(3). <u>See</u> <u>Smith v. Hartford Ins. Group</u>, 6 F.3d at 137.  We do note, however, that Haberern's misrepresentation argument has troubling implications because the summary plan description pages given to her made it clear that the retirement benefit was based on compensation and that compensation did not include bonuses.  <u>See</u> app. at 167 (Haberern's testimony that she received her trial exhibit 1, the summary plan description, when the plan was put in place); app. at 279 (exhibit 1 includes a page indicating compensation means "salary or wages <u>excluding</u> bonuses") (emphasis in original document); app. at 281 (exhibit 1 includes a page indicating the retirement benefit is based on "compensation" subject to a cap).  Of course, the summary plan description mirrored the plan itself.  Thus, Haberern effectively is relying on parol evidence to contradict clearly defined terms of a plan revealed to her in writing.  Accordingly, if we adopt her approach we will create a precedent for any beneficiary to make claims for benefits beyond those provided in a plan.  It would be difficult to reconcile that result with our cases holding that oral or informal amendments to ERISA benefit plans are precluded. <u>See</u> <u>Confer v. Custom Eng'g Co.</u>, 952 F.2d 41, 43 (3d Cir. 1991); <u>Frank v. Colt Indus., Inc.</u>, 910 F.2d 90, 98 (3d Cir. 1990).  <u>See</u> <u>also</u> <u>Schoonejongen v. Curtiss-Wright Corp.</u>, 18 F.3d 1034, 1040 (3d Cir. 1994) ("Unless and until the written plan is altered in a manner, and by a person or persons authorized in the plan, neither the plan administrator nor a court is free to deviate from the terms of the original plan.").

In this regard, we deem it significant that the district court found that Haberern's "duties as a secretary-bookkeeper involved handling the telephone, scheduling appointments, processing insurance claims forms, typing letters,

26

We also point out that insofar as we can ascertain the record does not support a finding that Haberern suffered damages by reason of the breach of fiduciary duty predicated on the alleged misrepresentation.  In its opinion, the district court concluded that the appellants did not notify Haberern "that designating a portion of her compensation as a bonus would have the effect of reducing her pension benefits."  Haberern, 822 F. Supp. at 254.  The court later explained that because the appellants "failed to inform [Haberern] that characterizing a portion of her compensation as a bonus would reduce significantly her pension benefits, they breached their fiduciary duties under ERISA."  Id. at 261.  But the court never explained what damages Haberern suffered by reason of the appellants' failure to give her this information.  It did not suggest, for example, that Haberern had a veto power over the appellants' decision to divide her compensation between salary and bonus and, of course, she had no such power.  Nor does it indicate that the evidence demonstrated that if Haberern had been aware of the significance of the designation of a portion of her compensation as a bonus,

receiving payments, bookkeeping, taking care of checkbooks, and paying all the bills."  Furthermore, she kept an accounting of the contributions to the defined contribution plan.  Haberern, 822 F. Supp. at 252.  Surely it would be extraordinary to hold that a person with such responsibilities who had possession of a summary plan description expressly indicating that her benefits would be based on her compensation excluding bonuses, contrary to the terms of the plan effectively could obtain a modification of the plan so that her benefits would be predicated on compensation including bonuses.  However, in view of our disposition, we need not discuss this point further.

27

she would have resigned and obtained a different position paying higher compensation elsewhere.

Similarly, Haberern does not explain what damages she suffered by reason of appellants' alleged misrepresentation in not explaining the significance of the division of her compensation into salary and bonus. Brief at 28-30. Rather, she contends that the "'bonus' designation reduced [her] pension benefit." That observation, though undoubtedly correct, does not explain how Haberern suffered damages from the misrepresentation as distinguished from the design of the plan.

C. The Elimination of Haberern's Life Insurance Benefit and the Simultaneous Increase of the Doctors' Life Insurance Benefit

The district court found that the appellants' elimination of life insurance benefits in the defined benefit plan for beneficiaries over age 56, a change which affected only Haberern, and the simultaneous tripling of the face amount of the life insurance policies for Kaupp and McDonald, constituted a violation of section 510 of ERISA. The district court reached this conclusion after finding that the appellants' stated reason for the changes, that they wished to reduce costs, was "beyond belief" in light of the increase in coverage for the doctors. Haberern, 822 F. Supp. at 262.

The appellants argue that section 510 does not apply because, while it prohibits discrimination against a plan participant for the purpose of interfering with the attainment of

28

plan rights, it does not prohibit plan amendments which affect only one person. We agree. Section 510 of ERISA provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C. § 1140.

We have stated that Congress enacted section 510 primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension benefits." Gavalik v. Continental Can Co., 812 F.2d 834, 851 (3d Cir.) (quoting West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980)), cert. denied, 484 U.S. 979, 108 S.Ct. 495 (1987). See also Ingersoll-Rand, 498 U.S. at 143, 111 S.Ct. at 485 ("[b]y its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. . . . We have no doubt that his claim is prototypical of the kind Congress intended to cover under §510.") (citations omitted). Section 510 makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate. . . ." 29 U.S.C. § 1140. The only one of these terms capable of broad interpretation is "discriminate." But courts construing "discriminate" have concluded, consistently with our approach in Gavalik, that the term should be limited to actions affecting the employer-employee relationship, and we adhere to this construction.

29

McGath v. Auto-Body North Shore, Inc., 7 F.3d 665 (7th Cir. 1993), is helpful. In McGath, the employer hired the plaintiff, McGath, in July 1983. At that time it maintained an ERISA-qualified pension plan for its eligible employees. One of the requirements to qualify for the plan was the completion of one year of service. After completing one year of service, an employee would be admitted into the plan on the next entry date, either October 1 or April 1.

After McGath had completed one year of service, but before the next entry date into the plan, the employer became concerned that it would not survive financially subsequent to McGath's entry into the plan. To solve this problem, on September 30, 1984, the employer amended the plan to require three years of completed service. McGath continued to work for the employer. Two years later, on September 30, 1986, when McGath was one day short of becoming eligible under the plan, the employer amended it to limit eligibility to those eligible on September 30, 1986.

When McGath retired three years later, he unsuccessfully claimed benefits under the original plan. McGath filed suit alleging that the defendants had interfered with his attainment of pension benefits by deliberately discriminating against him in violation of ERISA section 510, 29 U.S.C. § 1140. The district court granted the defendants summary judgment. It concluded that section 510 protects only against actions intended to deny plan rights that affect the employment relationship.

Because the amendments affected only the terms of the plan, and did not affect McGath's employment, there was no violation.

The court of appeals affirmed. It noted that it had previously determined that:

> the focus of § 510 is not on amendments to the plan itself. Rather we held that '[i]t is clear from the text of the statute . . . that § 510 was designed to protect the employment relationship against actions designed to interfere with, or discriminate against, the attainment of a pension right. . . . Simply put, §510 was designed to protect the employment relationship which <u>gives rise</u> to an individual's pension rights.
> . . . This means that a fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way.'

<u>McGath</u>, 7 F.3d at 668 (quoting <u>Deeming v. American Standard, Inc.</u>, 905 F.2d 1124, 1127 (7th Cir. 1990) (emphasis in original)). The court then concluded McGath did not have a cognizable section 510 claim. The court noted that McGath also alleged that the employer discriminated against him by bending the eligibility requirements for others. The court rejected the argument that there was a genuine issue of triable fact as to whether such discrimination took place, concluding:

> We need not address, however, this nettlesome issue because, even if Mr. McGath were able to show such disparate treatment, we do not believe that § 510 provides him any relief. Because the employer, as the settlor of the plan, had the right to change the plan's terms, Mr. McGath cannot claim that the alleged discriminatory injury flows from the plan amendments. . . . ERISA § 510 affords protection from discrimination that interferes 'with the attainment of any right to which such participant may become entitled under the plan.' Mr. McGath does not have a <u>right</u> to treatment that is contrary to the terms of the plan, even if those terms are breached for others.

31

McGath, 7 F.3d at 670 (emphasis in original).

Other courts have reached similar results. See West v. Butler, 621 F.2d at 245-46 ("we conclude that discrimination, to violate § 510, must affect the individual's employment relationship in some substantial way."); Deeming v. American Standard, Inc., 905 F.2d at 1128 ("[s]ection 510 of ERISA is simply not the appropriate vehicle for redressing the unilateral elimination of severance benefits accomplished independently of employee termination or harassment."); Owens v. Storehouse, Inc., 984 F.2d 394, 398 (11th Cir. 1993) ("[i]t is insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan"); McGann v. H & H Music, 946 F.2d 401, 408 (5th Cir. 1991), cert. denied, 113 S.Ct. 482 (1992) (section 510 does not apply to a plan limit on AIDS-related claims for all employees even if AIDS benefits singled out for discriminatory purpose) But see Newton v. Van Otterloo, 756 F. Supp. 1121, 1136 (N.D. Ind. 1991) ("[r]etaliatory curtailment of benefits under an ERISA plan may trigger § 1140"); Vogel v. Independence Fed. Sav. Bank, 728 F. Supp. 1210, 1226 (D. Md. 1990).

Our analysis compels us to hold that the appellants' action in adopting the life insurance amendment is not actionable under section 510. If we held otherwise, our ruling would contradict the plain language of that section. Additionally, we would overlook the structure of ERISA which sets forth separate provisions for the protection of the employment relationship in section 510 and the protection of beneficiaries from

32

discriminatory modifications of pension plans in section 240(g),

29 U.S.C. § 1054(g).[0]


### D. The July 28, 1987 Letter

Lehigh Valley asserts that the district court erred in penalizing it for its alleged failure to provide Haberern with an explanation and accompanying calculations to demonstrate how it computed her benefits under the defined benefit plan.  Section 105(a) of ERISA imposes an obligation on a plan administrator to:

> furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information --(1) the total benefits accrued, and (2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

29 U.S.C. § 1025(a).  An administrator who fails or refuses to comply with such a request within the court's discretion may be held personally liable to the requesting party for up to $100 for each day after the refusal.  Thus, section 502(c)(1), 29 U.S.C. §1132(c)(1), provides:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal. . . .

---

[0]The appellants also contend that Haberern suffered no loss from the elimination of her life insurance coverage, because if not eliminated "her life insurance policy simply would have been cashed out upon retirement, and that amount would have been used to fund [Haberern's] monthly retirement benefit (or lump-sum equivalent) provided by the plan."  Brief at 24.  In view of our conclusion, we need not consider this argument.

33

The district court, relying on a letter Haberern's attorney sent to the appellants' attorney, applied the foregoing two sections, found a violation, and awarded damages in the amount of $100 a day for a total of $191,300.

> We set forth the two-page letter in full:
>
> Our firm has been retained by Mrs. Ruth Haberern.  She is a Plan Participant in both the Defined Benefit Pension Plan and the Defined Contribution Plan.  We understand your firm is counsel to Dr. McDonald, Trustee of these two plans.
>
> Several aspects of the administration of the two Plans, as pertinent to our client are troublesome.  For example, Mrs. Haberern officially retired on January 2, 1985.  Yet, more than thirty (30) months transpired before Mrs. Haberern received a $42,986.24 check.  This July 9 check, according to Dr. McDonald's accompanying letter, represented the 'total vested benefit due to you under the Kaupp Vascular Surgeons Defined Benefit Pension Plan'.  However, there was no explanation, accompanying calculations, to support the amount of this July 9, 1987, check.
>
> By letter dated April 27, 1987, Mrs. Haberern was advised by Dr. McDonald that the Defined Benefit Pension Plan was terminated effective August 31, 1984; yet, it took nearly three years for a disbursement to be made to Mrs. Haberern, a Plan Participant.
>
> Mrs. Haberern has yet to receive her defined contribution pension plan check!  She did receive annual reports concerning the plans.
>
> Mrs. Haberern does not have, nor has she ever received, the full text of the defined contribution pension plan.
>
> There are additional questions with regard to the administration of the two pension plans.  We need to discuss these

34

> questions with you and the Administrator of the two plans.
>
> I shall call your office on Friday, July 31, to secure a mutually convenient date for the requested meeting.

App. at 405-06 (emphasis in original). The district court concluded this letter was a request for an explanation of the calculation of Haberern's benefits which was not then provided to Haberern.[0]

We start our discussion on this issue by pointing out that statutory penalty provisions are construed strictly. See Ivan Allen Co. v. United States, 422 U.S. 617, 626, 95 S.Ct. 2501, 2506 (1975) (tax provision aimed at accumulated taxable income strictly construed). As might be expected, courts have taken this approach in applying penalty provisions of ERISA. Tracey v. Heublein, Inc., 772 F. Supp. 726 (D. Conn. 1991) (requirements that request requirement of section 105(a) be in writing may not be waived); Chambers v. Kaleidoscope, Inc. Profit Sharing Plan, 650 F. Supp. 359, 370 (N.D. Ga. 1986) (corporation

---

[0]Haberern served a motion in this court after oral argument which she described as a "motion to correct the record." In particular, Haberern asked that we "correct the factual misstatement made by Appellants' counsel during oral argument" that Haberern never had made a written request for information in conformity with section 502(c). In her motion, Haberern contended that the statement was incorrect because a demand for an accounting, a document request, pleadings, and briefs, documents which she served within this litigation, constituted section 502(c) requests. We denied this motion, as the district court did not assess penalties by reason of the appellants' alleged failure to comply with these litigation documents. Thus, we have no reason to consider whether a demand within the context of litigation can be a request within sections 105(a) and 502(c)(1).

cannot be liable when request for information was never sent to it).

When the foregoing strict construction precept is recognized and the specific language of section 105(a) and 502(c), 29 U.S.C. §§ 1025(a) and 1132(c), is considered, it becomes evident that Haberern's attorney's letter cannot be regarded as a statutory request for an explanation of Haberern's benefits within those sections.[0]  Haberern's attorney's letter requested only that a meeting be scheduled.  While the letter complained that certain materials had not been supplied, it never requested that they be supplied.  In these circumstances, we cannot understand how this letter could be construed as a written request under section 105(a), 29 U.S.C. § 1025(a).

We find support for our conclusion in <u>Fisher v. Metropolitan Life Ins. Co.</u>, 895 F.2d 1073 (5th Cir. 1990).  In <u>Fisher</u>, the plaintiff had sent a handwritten scribbled note at the bottom of a social security award to the insurance company designated to administer the plan.  The note requested, "a copy

---

[0]We note that in light of the requirement that a request in writing be sent to the plan "administrator" as used in section 105(a), 29 U.S.C. § 1025(a), and as defined in section 3(16), 29 U.S.C. § 1002(16), it is questionable whether a request addressed to Lehigh Valley's attorney could have been an effective statutory request regardless of its form.  In this case, the letter implicitly acknowledges that the recipient is not the administrator when it suggests discussing "these questions with you and the Administrator of the two plans."  App. at 406.  <u>See</u> <u>Fisher v. Metropolitan Life Ins. Co.</u>, 895 F.2d 1073, 1077 (5th Cir. 1990) (discussing whether life insurance company as agent to administer the plan should be regarded as <u>de</u> <u>facto</u> plan administrator).  But because we find the letter was not a "request" within the meaning of section 1025(a), it is unnecessary to reach this issue.

of the policies covering my contract for salary continuation."
Id. at 1077. The court concluded this note was insufficient to
constitute a request for plan documents. Id. See also Chas.
Kurz & Co. v. United States, 698 F. Supp. 268 (Ct. Int'l Trade
1988) (petition for remission of excise duties was not a
"request" for retroactive application of amended tariff statute).
Further, the court in Fisher noted that the defendant responded
to the scribbled note by suggesting that a copy of the policies
"covering your contract" could be obtained from the plaintiff's
previous employer. Fisher, 895 F.2d at 1077. This response led
the court to believe that the defendant's understanding of the
note was consistent with it not being a request for plan
documents. Consequently, the court concluded it could not find
the district court had abused its discretion in refusing to award
penalties under section 502(c), 29 U.S.C. § 1132(c). We
therefore will reverse the judgment of the district court
imposing penalties on the appellants for failing to respond to
the letter by supplying information regarding the calculation of
Haberern's benefits.

IV. CONCLUSION

In view of our aforesaid discussion, we will reverse
the judgment of May 13, 1993, in all respects, except that we
will not reverse the district court's conclusion that the
appellants breached their fiduciary duty by requiring Haberern to
sign a release to obtain her benefits under the defined

37

contribution plan.  We will remand the matter to the district court for entry of a judgment in conformity with this opinion.